POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Movant Ashley Walker and*
*Proposed Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAWSHEEN DUFFAYDAR, Individually and on behalf of all others similarly situated, | Case No. 2:24-cv-02952-ODW-JC |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF ASHLEY WALKER FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL** |
| v. | |
| SONDER HOLDINGS INC., FRANCIS DAVIDSON, CHRIS BERRY, and DOMINIQUE BOURGAULT, | DATE: July 8, 2024 TIME: 1:30 p.m. JUDGE: Otis D. Wright, II CTRM: 5D |
| Defendants. | |

MEMORANDUM OF POINTS AND AUTHORITIES - 2:24-cv-02952-ODW-JC; 2:24-cv-04798

TAD PARK, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

SONDER HOLDINGS INC., FRANCIS DAVIDSON, SANJAY BANKER, CHRIS BERRY and DOMINIQUE BOURGAULT,

Defendants.

Case No. 2:24-cv-04798

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ........................................................................ 2

II.     STATEMENT OF FACTS ............................................................................... 3

III.    ARGUMENT................................................................................................... 9

        A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ........................................................................... 9

        B.    WALKER SHOULD BE APPOINTED LEAD PLAINTIFF .................. 10

              1.    Walker Is Willing to Serve as Class Representative........................... 11

              2.    Walker Has the "Largest Financial Interest"...................................... 11

              3.    Walker Otherwise Satisfies the Requirements of Rule 23 ................... 13

              4.    Walker Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses............................... 16

        C.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ................................................................................. 16

IV.     CONCLUSION............................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hessefort v. Super Micro Comput., Inc.*,
    317 F. Supp. 3d 1056 (N.D. Cal. 2018) .................................................................. 13

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ................................................................................... 12

*In re Solar City Corp. Sec. Litig.*,
    No. 16-CV-04686-LHK, 2017 WL 363274 (N.D. Cal. Jan. 25, 2017) ..................... 14

*Knox v. Yingli Green Energy Holding Co.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) .................................................................. 12

*Lax v. First Merchants Acceptance Corp.*
    No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ..................................... 12

*Mulligan v. Impax Lab'ys, Inc.*,
    No. C-13-1037 EMC, 2013 WL 3354420 (N.D. Cal. July 2, 2013) ........................... 9

*Nicolow v. Hewlett Packard Co.*,
    No. 12-05980 CRB, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013) ............................. 12

*Osher v. Guess?, Inc.*,
    No. CV01-00871LGB(RNBX), 2001 WL 861694 (C.D. Cal. Apr. 26,
    2001) ................................................................................................................... 16

*Richardson v. TVIA, Inc.*,
    No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ............... 9, 14

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................................. 15

*Tai Jan Bao v. SolarCity Corp.*,
    No. 14-CV-01435-BLF, 2014 WL 3945879 (N.D. Cal. Aug. 11, 2014) .................. 13

**Statutes**

15 U.S.C. §78j(b) ........................................................................................................ 9

15 U.S.C. §78t(a) ............................................................................................ 9

15 U.S.C. § 78u-4 ................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 .................................... *passim*

**Rules**

17 C.R.F. § 240.10b-5 ..................................................................................... 9

Fed. R. Civ. P. 23 ..................................................................... 2, 10, 13, 14

Fed. R. Civ. P. 42 ......................................................................... 1, 2, 9, 10

Movant Ashley Walker ("Walker") respectfully submits this Memorandum of Points and Authorities in support of his motion, pursuant to Federal Rule of Civil Procedure 42 ("Rule 42") and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Walker as Lead Plaintiff on behalf of a class (the "Class") consisting of all persons or entities who purchased or otherwise acquired publicly traded Sonder Holdings Inc. ("Sonder" or the "Company") securities between March 16, 2023 and March 15, 2024, inclusive (the "Class Period"); and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.[1]

---

[1] On April 11, 2024, the first-filed of the Related Actions was filed in this Court, styled *Nawsheen Duffaydar v. Sonder Holdings Inc. et al*, No. 2:24-cv-02952 (the "*Duffaydar* Action"), alleging a class period including all persons or entities who purchased or otherwise acquired publicly traded Sonder securities between March 16, 2023 and March 15, 2024, inclusive. *See* Dkt. No. 1 at 1 ¶ 1. Then, on June 7, 2024, ***just one business day*** prior to the statutory deadline to seek appointment as lead plaintiff under the PSLRA, the second-filed of the Related Actions, styled *Park v. Sonder Holdings Inc. et al*, No. 2:24-cv-04798 (the "*Park* Action") was filed in this Court, alleging substantially the same wrongdoing as the *Duffaydar* Action against overlapping defendants and alleging a larger class period including persons or entities who purchased or otherwise acquired Sonder securities between May 11, 2022 and March 15, 2024, inclusive. *See Park* Action, Dkt. No. 1 at 1 ¶ 1. However, Walker respectfully submits that because putative class members were not afforded sufficient time to review the claims or class period of the *Park* Action, financial interest in the Related Actions should be calculated pursuant to the class period alleged in the *Duffaydar* Action, the only properly noticed action.

MEMORANDUM OF POINTS AND AUTHORITIES - 2:24-cv-02952-ODW-JC; 2:24-cv-04798

1

## I. PRELIMINARY STATEMENT

The complaints in the Related Actions allege that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act. Sonder investors, including Walker, incurred significant losses following the disclosures of the alleged fraud, which caused the prices of Sonder securities to fall sharply, damaging Walker and other Sonder investors.

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact. Here, the Related Actions are putative class actions alleging violations of the Exchange Act by the same defendants arising from substantially the same alleged fraud. As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the litigation and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, Walker purchased 30,986 shares of Sonder stock, expended $22,240 on these transactions, retained 1,549 of his shares of Sonder stock and, as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $16,357. *See* Pafiti Decl., Ex. A. Accordingly, Walker believes that he has the largest financial interest in the relief sought in this litigation. Beyond his considerable financial interest, Walker also meets the applicable requirements of Rule 23 because his

claims are typical of absent Class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, Walker has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Walker respectfully requests that the Court enter an Order consolidating the Related Actions, appointing Walker as Lead Plaintiff for the Class, and approving his selection of Pomerantz as Lead Counsel for the Class.

## II.   STATEMENT OF FACTS

Sonder engages in hospitality services. It operates and manages various accommodations that are suitable for one night and extended stays.

According to the complaints in the Related Actions, throughout the Class Period, Defendants made statements that were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Sonder failed to disclose all issues with its internal controls; (2) Sonder's financial statements for the Company's 2022 Annual Report

and the interim periods ended March 31, June 30, and September 30, 2023 contained material errors in the way the Company accounted for the valuation and impairment of operating lease Right-of-Use ("ROU") assets; (3) as a result, Sonder would need to restate its previously issued financial statements for those periods; and (4) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

On March 15, 2024, after market hours, the Company issued a press release on Form 8-K announcing the Company's audited financial statement for its 2022 Annual Report, and the unaudited consolidated financial statements in 2023 (collectively with the 2022 Annual Report, the "Affected Financial Statements"), should no longer be relied upon due to "accounting errors related to the valuation and impairment of operating lease ROU assets and related items."

The 8-K stated the following in relevant part:

**Item 4.02 Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review**

On March 14, 2024, the Audit Committee (the "Audit Committee") of the Board of Directors of the Company determined, based on management's recommendation, that the Company's audited consolidated financial statements for the year ended December 31, 2022 (the "2022 Annual Financial Statements"), and the unaudited condensed consolidated financial statements included in each of the Company's quarterly reports on Form 10-Q filed with the Securities and Exchange Commission (the "SEC") in 2023 (collectively with the 2022 Annual Financial Statements, the "Affected Financial Statements"), should no longer be relied upon due to accounting errors related to the valuation and impairment of operating lease right of use ("ROU") assets

and related items. In this report, the periods covered by the Affected Financial Statements are referred to as the "Non-Reliance Periods."

Any previously issued or filed reports, earnings releases, and investor presentations or other communications including or describing the Affected Financial Statements and related financial information covering the Non-Reliance Periods should no longer be relied upon. Similarly, the report of the Company's independent registered public accounting firm accompanying the previously issued 2022 Annual Financial Statements should no longer be relied upon.

The Company has previously identified and reported material weaknesses in internal controls over financial reporting related to the Company's leases, control activities and control environment. During the on-going preparation of the Company's financial statements for the fiscal year ended December 31, 2023, the Company's management identified specific errors in the processes and procedures surrounding the Company's assessment of the valuation and impairment of its ROU lease assets and related items. Upon additional review, the Company's management determined that the valuation of certain ROU lease assets and related items as of and for each of the Non-Reliance Periods had not considered certain relevant impairment indicators and related valuation information impacting the carrying value of such assets and related items, as required by Accounting Standards Codification (ASC) Nos. 842, Leases, and 360, Property, Plant, and Equipment, in addition to related standards and interpretations.

The Company previously recorded an impairment charge in the amount of $1.1 million related to ROU lease assets in its unaudited condensed consolidated financial statements for the three and nine months ended September 30, 2023, but no impairment charges were recorded in the other interim financial statements in the Non-Reliance Periods or in the 2022 Annual Financial Statements. Based on the Company's review, which is ongoing, the Company expects to record material non-cash impairment charges, and related reductions in ROU lease assets and related items, in certain of the Non-Reliance Periods.

The foregoing ROU lease asset and related item errors are non-cash in nature and will not impact the Company's reported cash balances or statements of cash flows for the Non-Reliance Periods. ***The Company expects that the***

*restatements will increase the Company's overall net loss and loss per share in the impacted periods*.

The Company intends to restate the Affected Financial Statements to correct the errors discussed above, and consider any other error corrections identified in the course of its review, as soon as practicable. Investors and others should rely on financial information and other disclosures regarding the Non-Reliance Periods only after the Company restates its financial statements for the Non-Reliance Periods.

The Company anticipates that it will not timely file its Annual Report on Form 10-K for the fiscal year ended December 31, 2023 (the "FY 2023 10-K") and will file a notification of late filing on Form 12b-25 with the SEC. The Company does not currently expect that it will file the FY 2023 10-K within the 15-day extension period contemplated by Rule 12b-25(b) under the Securities Exchange Act of 1934, as amended. Accordingly, the Company expects to receive a notice from The Nasdaq Stock Market that it is not in compliance with the timely filing requirement for continued listing under Nasdaq Listing Rule 5250(c)(1).

*** 

Although the assessment is not yet complete, the Company anticipates that the review will result in one or more material weaknesses in the Company's internal control over financial reporting during the applicable periods, in addition to the Company's previously identified and reported material weaknesses.

The Company's management and the Audit Committee have discussed the foregoing matters with the Company's independent registered public accounting firm, Deloitte & Touche LLP.

*The Company's restatement and the related items discussed in this Form 8-K could have an adverse effect upon the Company's debt, including under the Loan and Security Agreement dated as of December 21, 2022, as amended, with Silicon Valley Bank, a division of First Citizens Bank & Trust Company, and the Note and Warrant Purchase Agreement dated as of December 10, 2021, as amended, with certain private placement investors*. The Company is engaging in discussions with its lenders to seek waivers of any noncompliance under the terms of its debt resulting from the

accounting errors and to permit the late filing of the FY 2023 10-K. *If such waivers are not obtained, any such noncompliance may entitle our lenders to terminate any existing commitments to lend, impose increased interest rates, accelerate our outstanding debt obligations, initiate foreclosure proceedings against any assets constituting collateral for such obligations and exercise other rights and remedies available under the terms of our debt agreements. If our debt were to be accelerated, the Company may not have sufficient cash or be able to borrow sufficient funds to refinance the debt or sell sufficient assets to repay the debt, which could immediately adversely affect our business, cash flows, results of operations and financial condition.* Even if we were able to obtain new financing or negotiate amended terms with our existing lenders, such financing or amendments may not be on commercially reasonable terms or on terms that are acceptable to us.

As of December 31, 2023, the Company's total cash, cash equivalents and restricted cash was $136.5 million, of which $40.7 million was restricted, as compared to $207.2 million, of which $41.2 million was restricted, as of September 30, 2023. As communicated in prior disclosures, the Company has been executing on a number of initiatives to improve its financial position, including reducing its corporate headcount by 38% since the first quarter of 2022, and engaging in a portfolio optimization program to improve the financial performance of the properties it operates. The Company is also exploring a number of additional opportunities to improve revenue by enhancing its distribution arrangements, further reduce its expenditures, and partner with current or alternative capital providers to improve its liquidity position, but can give no assurances that these alternatives will be successful. *If these alternatives are not successful, the Company may not be able to continue ongoing operations or meet its obligations without favorable liquidity options or additional funding.*

(Emphasis added).

That same day, the Company issued a Notification of Late Filing on Form 12b-25, which stated the following in relevant part:

Sonder Holdings Inc. (the "Company") is unable to file its Annual Report on Form 10-K for the year ended December 31, 2023 (the "Form 10-K") within the prescribed time period, without unreasonable effort or expense. As disclosed in the Company's Current Report on Form 8-K dated March 15,

2024, which is hereby incorporated by reference, on March 14, 2024, the Audit Committee of the Board of Directors of the Company determined, based on management's recommendation, that the Company's audited consolidated financial statements for the year ended December 31, 2022, and the unaudited condensed consolidated financial statements included in each of the Company's quarterly reports on Form 10-Q filed with the Securities and Exchange Commission in 2023, should no longer be relied upon due to accounting errors related to the valuation and impairment of operating lease right of use assets and related items. The Company intends to restate the affected financial statements to correct the errors and any other errors identified in the course of its review, as soon as practicable. The Company's management is also assessing the effect of these matters on the Company's internal control over financial reporting and its disclosure controls and procedures. The Company requires additional time to complete the foregoing restatements and control assessments and to finalize its fiscal year 2023 financial statements for inclusion in the Form 10-K. The Company does not expect to file the Form 10-K within the 15-day extension period prescribed by Rule 12b-25 under the Securities Exchange Act of 1934, as amended.

The description above is preliminary and subject to change in connection with the Company's ongoing review and the completion of the anticipated restatements. Accordingly, there can be no assurance as to the timing of the filing of the Form 10-K or the results of the Company's ongoing review.

On this news, Sonder's stock price fell $2.10 per share, or 38.2%, to close at $3.40 per share on March 18, 2024, damaging investors.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Walker and other Class members have suffered significant losses and damages.

## III.   ARGUMENT

### A.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication.  When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.  Fed. R. Civ. P. 42(a); *see also Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *2 (N.D. Cal. Apr. 16, 2007); *Mulligan v. Impax Lab'ys, Inc.*, No. C-13-1037 EMC, 2013 WL 3354420, at *2-3 (N.D. Cal. July 2, 2013).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed."  15 U.S.C. § 78u-4(a)(3)(B)(ii).  As such, the PSLRA does not displace the traditional legal standards for consolidation under Rule 42(a).

Each of the Related Actions has been filed in this District alleging similar factual and legal grounds to support allegations of violations of Sections 10(b) and 20(a) of the Exchange Act, as well as Rule 10b-5 promulgated thereunder, by overlapping Defendants arising from the public dissemination of false and misleading information to investors.

Accordingly, the Related Actions should be consolidated pursuant to Rule 42(a) for all purposes.

### B.      WALKER SHOULD BE APPOINTED LEAD PLAINTIFF

Walker should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in the litigation to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  In addition, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff.  *Id.* § 78u-4(a)(3)(B)(i).  The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Walker satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1.    Walker Is Willing to Serve as Class Representative

On April 11, 2024, counsel for plaintiff in the *Duffaydar* Action caused the statutorily required Notice to be published via *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action lawsuit had been filed on behalf of Sonder investors, and which advised investors in Sonder securities that they had until June 10, 2024—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff.  *See* Pafiti Decl., Ex. B.

Walker has filed the instant motion pursuant to the Notice and has attached a sworn Certification attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary.  *See id.*, Ex. C.  Accordingly, Walker satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2.    Walker Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . in the determination of the court, has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-

4(a)(3)(B)(iii).  To the best of his knowledge, Walker has the largest financial interest of any Sonder investor or investor group seeking to serve as Lead Plaintiff based on the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997).  In accord with courts nationwide, these so-called *Lax* factors have been adopted by courts in the Ninth Circuit, including in this District.  *See Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) ("District courts have typically considered the [*Lax*] factors to determine who has the largest financial interest[.]" (internal quotation marks and citations omitted)); *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (same); *see also, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).  Of the *Lax* factors, courts in this Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See Knox*, 135 F. Supp. 3d. at 1163; *Nicolow*, 2013 WL 792642, at *4.

During the Class Period, Walker: (1) purchased 30,986 shares of Sonder stock; (2) expended $22,240 on these purchases; (3) retained 1,549 of his shares of Sonder stock; and (4) as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $16,357 in connection with his Class Period transactions in publicly traded

MEMORANDUM OF POINTS AND AUTHORITIES - 2:24-cv-02952-ODW-JC; 2:24-cv-04798

12

Sonder securities.  *See* Pafiti Decl., Ex. A.  To the extent that Walker possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3.   Walker Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff movant satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead, a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient.  *See Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-01 (N.D. Cal. 2018); *Tai Jan Bao v. SolarCity Corp.*, No. 14-CV-01435-BLF, 2014 WL 3945879, at *3 (N.D. Cal. Aug. 11, 2014).  "This showing need not be as thorough as what would be required on a class certification motion and only needs

to satisfy typicality and adequacy." *In re Solar City Corp. Sec. Litig.*, No. 16-CV-04686-LHK, 2017 WL 363274, at \*5 (N.D. Cal. Jan. 25, 2017).

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Richardson*, 2007 WL 1129344, at \*4 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Walker's claims are typical of those of the Class. Walker alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Sonder, or by omitting to state material facts necessary to make the statements they did make not misleading. Walker, like other Class members, purchased publicly traded Sonder securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosures of those misrepresentations and/or omissions that drove Sonder's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

In determining whether the adequacy of representation requirement of Rule 23(a)(4) is met, courts in the Ninth Circuit consider whether "the representative plaintiffs and their

counsel have any conflicts of interest with other class members" and ask "will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted).

Walker is an adequate representative for the Class.  Here, Walker has submitted a sworn Certification declaring his commitment to protect the interests of the Class.  *See* Pafiti Decl., Ex. C.  There is no evidence of antagonism or conflict between Walker's interests and those of the Class, and Walker's significant financial interest demonstrates that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.  Moreover, Walker has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as these Related Actions, and submits his choice of Pomerantz to the Court for approval as Lead Counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).  In addition to Pomerantz, Walker is also represented by the Bronstein, Gewirtz & Grossman, LLC law firm in this litigation.

Further demonstrating his adequacy, Walker has submitted a sworn Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class.  *See* Pafiti Decl., Ex. D.

### 4. Walker Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Walker as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)   will not fairly and adequately protect the interest of the class; or

(bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Walker's ability and desire to fairly and adequately represent the Class has been discussed above.  Walker is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class.  Accordingly, Walker should be appointed Lead Plaintiff for the Class.

### C. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court.  *See id.* § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, No. CV01-00871LGB(RNBX), 2001 WL 861694, at *4 (C.D. Cal. Apr. 26, 2001).  The Court should interfere with a Lead Plaintiff's selection only when necessary to "protect the interests of the class."  *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *Osher*, 2001 WL 861694, at *4 ("A court may reject the lead plaintiff's choice only if it is necessary to protect the interests of the class.").

Here, Walker has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Pafiti Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010, and the $90 million settlement in *Klein v. Altria Group, Inc. et al*, No. 3:20-cv-00075 (E.D. Va.) in March 2022. *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Related Actions, Walker's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute the Related Actions effectively and expeditiously. Thus, the Court may be assured that by approving

Walker's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

## IV.  CONCLUSION

For the foregoing reasons, Walker respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Walker as Lead Plaintiff for the Class; and (3) approving Pomerantz as Lead Counsel for the Class.

Dated:  June 10, 2024                                    Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Movant Ashley Walker and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Movant Ashley Walker*

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*
Jennifer Pafiti