O

# United States District Court
# Central District of California

| | |
|---|---|
| NAWSHEEN DUFFAYDAR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SONDER HOLDINGS INC. et al.,<br><br>Defendants. | Case № 2:24-cv-02952-ODW (JCx)<br>[c/w: 2:24-cv-04798-ODW (JCx)]<br><br>**ORDER CONSOLIDATING ACTIONS, AND APPOINTING LEAD PLAINTIFF AND CLASS COUNSEL [20, 24, 28]** |
| TAD PARK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SONDER HOLDINGS INC. et al.,<br><br>Defendants. | |

## I. INTRODUCTION

Plaintiff Nawsheen Duffaydar brings this putative class action for securities fraud under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against Defendants Sonder Holdings, Inc. ("Sonder Holdings"), Francis Davidson, Chris Berry, and Dominique Bourgault (collectively, "Defendants"). (Compl., ECF No. 1.) Movants Tad Park, Michael Paleski, and Ashley Walker each move to consolidate this action with a parallel action filed by Park, and each seek appointment as lead plaintiff with their respective counsel as lead counsel. (Notice Tad Park ("Park Notice"), ECF No. 20; Notice Michael Paleski ("Paleski Notice"), ECF No. 24; Notice Ashley Walker ("Walker Notice"), ECF No. 28.) The motions are fully briefed. (*See* Mot. Tad Park ("Park Mot."), ECF No. 21; Mot. Michael Paleski ("Paleski Mot."), ECF No. 25; Mot. Ashley Walker ("Walker Mot."), ECF No. 29; Non-Opp'n ("Paleski Non-Opp'n"), ECF No. 32; Opp'n Tad Park ("Park Opp'n"), ECF No. 33; Opp'n Walker ("Walker Opp'n"), ECF No. 34; Reply Ashley Walker ("Walker Reply"), ECF No. 35; Reply Tad Park ("Park Reply"), ECF No. 36.)

For the reasons discussed below, the Court **GRANTS** all movants' Motions to Consolidate, **GRANTS** Movant Park's Motion for Appointment, and **DENIES** Movants Paleski's and Walker's Motion for Appointment.[1]

## II. BACKGROUND[2]

Sonder Holdings is a publicly traded hospitality services company under the ticker symbol "SOND" on the Nasdaq Global Market ("NASDAQ"). (Compl. ¶¶ 7–8.) On March 16, 2023, Sonder Holdings filed its Form 10-K annual report for the fiscal period ending on December 31, 2022 ("2022 Annual Report"). (*Id.* ¶ 17.) Sonder Holding's Chief Executive Officer Francis Davidson and Interim Chief Financial Officer Chris Berry signed the 2022 Annual Report attesting to its accuracy.

---

[1] After carefully considering the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

[2] The facts are drawn from Plaintiff's Complaint and the Court accepts as true for this motion all well-pleaded allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

(*Id*. ¶¶ 9–10, 17.) Thereafter, Sonder Holdings filed Form 10-Q quarterly reports ("Quarterly Reports") covering the first three quarters of fiscal year 2023. (*Id*. ¶¶ 21, 25, 29.) Davidson and Sonder Holding's new Chief Financial Officer Dominique Bourgault signed and attested to the accuracy of the Quarterly Reports. (*Id*. ¶¶ 11, 21, 25, 29.)

Despite the attestations, Sonder Holdings made false and misleading statements in its 2022 Annual Report and Quarterly Reports by failing to disclose all issues related to internal controls and material errors in the valuation and impairment of operating right of use ("ROU") assets. (*Id*. ¶ 32.) On March 14, 2024, Sonder Holdings issued a Form 8-K press release stating its "audited financial statement for the 2022 Annual Report and the unaudited consolidated financial statements in 2023 . . . should no longer be relied upon due to accounting errors related to the valuation and impairment of operating lease ROU assets and related items." (*Id*.) Its stock price subsequently dropped "38.2%, to close at $3.40 per share on March 18, 2024, damaging investors." (*Id*. ¶ 35.)

Duffaydar is a shareholder of Sonder Holdings. (*Id*. ¶ 6.) On April 11, 2024, Duffaydar filed this putative class action asserting securities violations against Sonder Holdings with the class period defined as March 16, 2023, through March 15, 2024 ("Original Class Period"). (*Id*. ¶¶ 1, 6.) On June 7, 2024, Park filed his own class action suit against Sonder Holdings ("Park Case") with an extended class period from May 11, 2022, to March 15, 2024 ("Longer Class Period"). Compl., *Park v. Sonder Holdings Inc.*, No. 2:24-cv-04798-ODW (JCx) (C.D. Cal. filed June 7, 2024), ECF No. 1 ("Park Compl.").

Tad Park, Michael Paleski, and Ashley Walker—each a shareholder of Sonder Holdings—now separately move to consolidate the Park Case with this action, to be appointed as lead plaintiff, and to have their attorneys appointed as lead counsel.

### III. MOTION TO CONSOLIDATE

In a securities class action, courts must first decide on the motion to consolidate before turning to the appointment of lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). A district court has broad discretion to consolidate cases that involve a common question of law or fact. Fed. R. Civ. P. 42(a)(2); *Inv'rs Rsch. Co. v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989). "To determine whether to consolidate, a court weighs the interest of judicial convenience against the potential for delay, confusion and prejudice caused by consolidation." *Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 807 (N.D. Cal. 1989).

In this case, Park, Paleski, and Walker each seek to consolidate the Park Case with this action. All movants agree that the two cases involve the same questions of law and fact such that consolidation would promote judicial economy. (Park Mot. 4; Paleski Mot. 8–9; Walker Mot. 9–10.) The Court likewise finds the two cases assert identical securities fraud claims arising from the same alleged misrepresentations in Sonder Holding's financial reporting, differing only as to the alleged class period. However, "differing class periods alone will not defeat consolidation." *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999). Accordingly, the Court **GRANTS** the Motions to Consolidate.

### IV. MOTION TO APPOINT LEAD PLAINTIFF AND LEAD COUNSEL

All movants timely filed Motions for Appointment within 60 days of the published notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). With timeliness not at issue, the lead plaintiff analysis requires determining whether Park, Paleski, or Walker has the largest financial interest to be presumed the most adequate plaintiff and whether any challenging movant can rebut the presumption. *Id.* § 78u-4(a)(3)(B)(iii).

#### A. Legal Standard

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") provides the process for appointing the lead plaintiff in a securities class action. *See* 15 U.S.C. § 78u-4(a)(3)(B). Any member of the purported class may move to serve as lead

plaintiff within 60 days after notice of action is published. *Id.* § 78u-4(a)(3)(A)(i)(II). The court must appoint as lead plaintiff the member "most capable of adequately representing the interests of class members." *Id.* § 78u-4(a)(3)(B)(i). There is a rebuttable presumption that the movant who (1) files the complaint or made a motion in response to the notice of action; (2) holds "the largest financial interest in the relief sought by the class"; and (3) otherwise satisfies the requirements of Rule 23(a), "in particular those of 'typicality' and 'adequacy,'" is the "most adequate plaintiff." *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002); *see* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). A party may rebut the presumption by showing that the presumed most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Once selected, the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." *Id.* § 78u-4(a)(3)(B)(v).

**B.   Discussion**

At the outset, Paleski concedes that he does not have the largest financial interest. (Paleski Non-Opp'n 2.) The Court thus **DENIES** Paleski's Motion for Appointment and turns to Park's and Walker's motions. Park seeks to calculate the financial interest using the Longer Class period. (Park Mot. 1.) If the Longer Class Period applies, Park suffers the most financial loss in the amount of $2,167,820.70. (*Id.* at 6; Decl. Charles Linehan ISO Park Mot. ("Linehan Decl.") Ex. C ("Park Loss Chart"), ECF No. 22-3.) Walker opposes the Longer Class Period and instead applies the Original Class Period, during which he suffered financial loss in the amount of $16,375. (Walker Opp'n 2, 5–6; Decl. Jennifer Pafiti ISO Walker Mot. ("Pafiti Decl.") Ex. A ("Walker Loss Chart"), ECF No. 30-1.) Walker also argues Park's former employment with Sonder Holdings renders him incapable of adequately representing the class. (*See* Walker Reply 6–8.) Specifically, Walker claims Park's former employment "raises the appearance of a conflict of interest" and the

"possibility that Park was privy to insider information." (*Id*. at 7 (internal quotation marks omitted).)

The crux of this lead plaintiff analysis is whether the Original Class Period or the Longer Class period should be used to determine the largest financial loss. The Court finds that the Longer Class period applies such that Park is the presumed lead plaintiff, and Walker fails to rebut the presumption.

    *1.*    *Class Period*

"[C]ourts usually . . . use the most inclusive class period and select as lead plaintiff the movant with the largest financial interest under that period." *Hardy v. MabVax Therapeutics Holdings*, No. 18-cv-01160-BAS-NLS, 2018 WL 4252345, at *4 (S.D. Cal. Sept. 6, 2018) (citing *Plumbers & Pipefitters Loc. 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624–25 (E.D. Wis. 2009)); *see also Miami Police Relief & Pension Fund v. Fusion-io, Inc.* No. 13-cv-05368-LHK, 2014 WL 2604991, at *1 n.3 (N.D. Cal. June 10, 2014) ("For purposes of appointing a lead plaintiff, the longest class period governs."); *Kangas v. Illumina Inc.*, No. 23cv2082-LL-MMP, 2024 WL 1587463, at *3 (S.D. Cal. Apr. 11, 2024) ("[Plaintiff's] request to apply the shorter class periods is contrary to the general practice."). The class period determination at this stage is "generally not considered binding on later stages of a private securities litigation case." *Hardy*, 2018 WL 4252345, at *5. Courts can deter bad faith extensions of the class period by determining whether the allegations that support the longer class period are frivolous. *Id*. at *5.

Here, the Longer Class Period is proper and not frivolous. The Longer Class Period begins on May 11, 2022, which is the date Sonder Holdings issued a shareholder letter claiming its ROU assets calculation adopted a "new leasing accounting standard." (Park Reply 2–3.) These statements are relevant to Sonder Holding's later announcement about "accounting errors related to the valuation and impairment of operating lease right of use ('ROU') assets and related items." (Compl.

¶¶ 32–33.)  Therefore, the Court declines to depart from general practice and adopts the longer, more inclusive class period in its lead plaintiff analysis.[3]

### 2. *Financial Interest*

The movant with the largest financial interest during the Longer Class period is presumed the most adequate plaintiff.  The PSLRA does not provide a formula to calculate the "largest financial interest in the relief sought by the class," and the Ninth Circuit has left it to the district courts to "select accounting methods that are both rational and consistently applied" in making this determination.  *In re Cavanaugh*, 306 F.3d at 730, n.4.  This Court and other district courts have applied "the 'Olsten-Lax' factors to determine who has the largest financial interest: '(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.'"  *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) (quoting *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *3 (N.D. Cal. Apr. 16, 2007)) (collecting cases).  Courts consider the fourth factor the "most determinative in identifying the plaintiff with the largest financial loss."  *Richardson*, 2007 WL 1129344, at *4; *see also Tanne v. Autobytel, Inc.*, 226 F.R.D. 649, 666 (C.D. Cal. 2005) (finding the movant who suffered the most financial loss to have the largest financial stake in the litigation).

Here, the four factors weigh in Park's favor.  Using the Longer Class Period, Park purchased 86,945 gross shares and 53,833 net shares, expended $2,246,664, and lost $2,167,821.  (Park Opp'n 6.)  Walker provides no calculations using the Longer Class Period.  Rather, Walker applies the Original Class Period and reports that he

---

[3] The Courts' adoption of the longer class period does not require republication of the notice of action.  As long as the complaints "are substantially the same," the PSLRA requires only one notice at the beginning of litigation.  15 U.S.C. § 78u-4(a)(3)(A)(ii).  "In general, republication is not required where a complaint expands the class period."  *Thomas v. Magnachip Semiconductor Corp.*, No 14-cv-01160-JST, 2015 WL 3749784, at *4 (N.D. Cal. June 15, 2025).

purchased 30,986 shares, retained 1,549 shares, expended $22,240, and lost $16,357. (Walker Mot. 12.) Because the Court finds using the longer, more inclusive class period is appropriate, Park has demonstrated the largest financial interest in the relief sought.

### 3. Typicality and Adequacy Under Rule 23

Having established that Park has the largest financial interest, attention turns to Park's pleadings and declarations to determine if he satisfies the requirements of typicality and adequacy under Rule 23(a). *In re Cavanaugh*, 306 F.3d at 730. "A wide-ranging analysis under Rule 23 is not appropriate [at the initial stages of the litigation] and should be left for consideration on a motion for class certification." *Takeda*, 67 F. Supp. 2d at 1136 (alteration in original). The movant with the largest financial interest that makes a prima facie showing of typicality and adequacy becomes the presumed most adequate plaintiff. *In re Cavanaugh*, 306 F.3d at 730.

The typicality inquiry assesses "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Adequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff[s] to vigorously prosecute the action." *Ferrari v. Gisch*, 225 F.R.D. 599, 607 (C.D. Cal. 2004) (alteration in original). A moving lead plaintiff meets this requirement "if there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation." *Richardson*, 2007 WL 1129344, at *4.

Like all other class members, Park purchased Sonder Holdings shares during the purported class period. Park Compl. ¶11, *Park Case*. The extended class period does not preclude a finding of typicality and adequacy. *See e.g. Takeda* 67 F. Supp.

2d at 1137 ("The slightly different class period alleged . . . does not preclude a finding of typicality); *Hardy*, 2018 WL 4252345, at *5 (finding the movant satisfied typicality and adequacy after applying the longer alleged class period); *Ali v. Intel Corp.*, No. 18-cv-00507-YGR, 2018 WL 2412111, at * (N.D. Cal. May 29, 2018) (finding a prima facie showing of typicality and adequacy despite different alleged class periods). Park's claims—that Sonder Holding's false and misleading statements on its financial statements violated securities law—arise from the same course of conduct and legal theory as the class. The uncontested Motions to Consolidate further support that Park's claims are similar and thus, typical, to the class. (*See generally* Park Mot. 4; Paleski Mot. 8–9; Walker Mot. 9–10.) Park suffered the largest financial harm and is "incentive[ized] to ensure vigorous advocacy." (Park Mot. 8.) No evidence suggests that he has conflicts with or interests antagonistic to other members of the class, and he has retained competent and experienced counsel. (*Id*. at 8–9.) Based on the pleadings and declarations, the Court finds that Park makes a prima facie showing of typicality and adequacy.

    *4.    Rebuttable Presumption*

Having satisfied all requirements, Park is presumed the most adequate plaintiff. A potential class member can rebut the presumption by providing proof that the presumed lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see In re Cavanaugh*, 306 F.3d at 730 ("At the third stage, the process turns adversarial and other plaintiffs may present evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy."). Assertions based on speculation alone will fail to rebut the lead plaintiff presumption. *Armour v. Network Assoc., Inc.*, 171 F. Supp. 2d. 1044, 1054 (N.D. Cal. 2001) (finding plaintiff's rebuttal arguments failed because they were based on pure speculation).

Here, Walker fails to adequately rebut the presumption because he relies on

unsupported allegations. Walker speculates that Park's past employment with Sonder Holdings as a software engineer from July 2017 and March 2020 "raises the appearance of a conflict of interest" and possibly made Park "privy to insider information." (Walker Opp'n 11; Walker Reply 6–8.) Park disputes this and represents that (1) he did not have access to non-public information and (2) his role as a former software engineer has no plausible connection with Sonder Holding's later accounting misrepresentations, made two years after he left the company. (Park Reply 6.) Walker provides no additional evidence or facts to support his allegations and his speculations alone, without "proof," are insufficient to rebut the presumption. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Accordingly, the presumption stands, and the Court appoints Park as lead plaintiff in this matter.

### C.     Lead Counsel

Once a lead plaintiff is selected, that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Park has selected Glancy Prongay & Murray LLP to represent him and the class. Having reviewed the firm's resume, the Court is satisfied that the firm will effectively represent the interests of the class and finds no conflicts in this record. No party has challenged the adequacy of this firm to serve as lead counsel. Therefore, the Court approves Glancy Prongay & Murray LLP as lead counsel.

## V.     CONCLUSION

For the reasons discussed above, the Court **GRANTS** the Motions to Consolidate, **GRANTS** Park's Motion for Appointment, and **DENIES** Paleski's and Walker's Motions for Appointment. (ECF Nos. 20, 24, 28.)

It is hereby **ORDERED** that this case is consolidated with *Tad Park v. Sonder Holdings Inc. et al.*, No. 2:24-cv-04798-ODW (JCx), for all purposes including trial. *Duffaydar v. Sonder Holdings Inc. et al.*, No. 2:24-cv-02952-ODW (JCx) is designated as the lead case. All documents related to either case should be filed in **only the lead case**. The caption page of all such documents filed with the Court in

this lead case shall be identical in form as the caption on this Order.

It is further **ORDERED** that Tad Park is designated as lead plaintiff in the consolidated actions, and that Glancy Prongay & Murray LLP. is designated as lead class counsel, subject to the Court's granting of a Motion for Class Certification.

**IT IS SO ORDERED.**

October 9, 2024

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**