ROBERT V. PRONGAY (SBN 270796)
 rprongay@glancylaw.com
EX KANO S. SAMS II (SBN 192936)
 esams@glancylaw.com
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff Tad Park*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAWSHEEN DUFFAYDAR, individually and on behalf all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SONDER HOLDINGS INC., et al., FRANCIS DAVIDSON, CHRIS BERRY, AND DOMINIQUE BOURGAULT<br><br>Defendants. | Case No. 2:24-cv-02952-ODW (JCx)<br>[c/w: 2:24-cv-04798-ODW (JCx)]<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Date: May 5, 2025<br>Time: 1:30 p.m.<br>Place: Courtroom 5D, First Street Courthouse<br>Judge: The Hon. Otis D. Wright, II |

# **TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................1

II.  STATEMENT OF FACTS ...........................................................................2

    A.  Company Background.......................................................................2

    B.  ASC 842 Lease Accounting Requirements ......................................2

    C.  ASC 360 (Property, Plant, and Equipment Requirements....................3

    D.  Throughout the Class Period, Defendants Represented That Sonder's Financial Statements Were Accurate and That There Were No Material Changes to the Company's Internal Control Over Financial Reporting 3

    E.  The Truth Begins to Emerge................................................................4

III.  STANDARD OF REVIEW ..........................................................................4

IV.  PLAINTIFF ADEQUATELY ALLEGES VIOLATIONS OF THE EXCHANGE ACT .............................................................................................................5

    A.  Plaintiff Adequately Alleges Falsity.................................................5

        1.  Defendants Concede that Sonder's Financial Statements Were False ........................................................................................5

        2.  Plaintiff Adequately Alleges That Defendants' Misrepresentations Regarding the Company's Internal Controls Were False and Misleading ..............................................................................6

    B.  Plaintiff Adequately Alleges that Defendants Acted With Scienter.......8

    C.  Plaintiff Adequately Alleges Loss Causation .......................................19

    D.  Plaintiff Adequately Alleges Control Person Liability.........................21

V.  CONCLUSION............................................................................................21

# TABLE OF AUTHORITIES

<u>CASES</u>

*Abe v. AFCH, Inc.*,
   2022 WL 159728 (C.D. Cal. Jan. 18, 2022) .......................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................................4

*Azar v. Yelp, Inc.*,
   No. 18-CV-00400-EMC, 2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) .............13

*Baer v. Shift4 Payments, Inc.*,
   No. 5:23-CV-3206, 2024 WL 3836676 (E.D. Pa. Aug. 14, 2024) ........................20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..........................................................................................4

*Berson v. Applied Signal Tech.*,
   527 F.3d 982 (9th Cir. 2008)...............................................................................7

*Bielousov v. GoPro, Inc.*,
   No. 16-cv-06654-CW, 2017 WL 3168522 (N.D. Cal. July 26, 2017) ............14, 15

*Bouzaglo v. Inspirato Inc.*,
   2024 WL 3738813 (D. Colo. July 16, 2024) ..................................................17, 18

*Cheng v. Activision Blizzard, Inc.*,
   2022 WL 2101919 (C.D. Cal. Apr. 18, 2022) ......................................................8

*Davis v. Yelp, Inc.*,
   No. 18-CV-00400-EMC, 2021 WL 4923359 (N.D. Cal. Sept. 17, 2021).............18

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) ...........................................................................................19

*E. Ohman J:or Fonder AB v. NVIDIA Corp.*,
   81 F.4th 918 (9th Cir. 2023)...........................................................................9, 11

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014)...............................................................................9

*Eminence Capital, L.L.C. v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003)................................................................21

*Flynn v. Sientra, Inc.*,
   2016 WL 3360676 (C.D. Cal. June 9, 2016) ...................................11, 18

*Hemmer Grp. v. SouthWest Water Co.*,
   527 F. App'x 623 (9th Cir. 2013) ...........................................................5

*Howard v. Everex Sys., Inc.*,
   228 F.3d 1057 (9th Cir. 2000).......................................10, 11, 16, 17

*In re Alphabet, Inc. Sec. Litig.*,
   1 F.4th 687 (9th Cir. 2021)...................................................................17

*In re BofI Holding, Inc. Sec. Litig.*,
   977 F.3d 781 (9th Cir. 2020)................................................................19

*In re Commtouch Software Ltd. Sec. Litig.*,
   2002 WL 31417998 (N.D. Cal. July 24, 2002)...................................8, 14

*In re Cylink Sec. Litig.*,
   178 F. Supp. 2d 1077 (N.D. Cal. 2001) ................................................5

*In re Diamond Foods, Inc., Sec. Litig.*,
   No. C 11-05386 WHA, 2012 WL 6000923 (N.D. Cal. Nov. 30, 2012)..........14, 18

*In re Impax Laboratories, Inc. Sec. Litig.*,
   No. C 04-04802 JW, 2007 WL 7022753 (N.D. Cal. July 18, 2007) ....................15

*In re Interpool, Inc. Sec. Litig.*,
   2005 WL 2000237 (D.N.J. Aug. 17, 2005).......................................8, 14

*In re Leapfrog Enter., Inc. Sec. Litig.*,
   No. 15-CV-00347-EMC, 2017 WL 732909 (N.D. Cal. Feb. 24, 2017) ................14

*In re Medicis Pharm. Corp. Sec. Litig.*,
   No. CV-08-1821-PHX-GMS, 2010 WL 3154863 (D. Ariz. Aug. 9, 2010) ..........16

*In re Nektar Therapeutics Sec. Litig.*,
   34 F.4th 828 (9th Cir. 2022)..................................................................8

*In re Quality Sys., Inc. Sec. Litig.*,
 865 F.3d 1130 (9th Cir. 2017)...................................................................................4

*In re Rigel Pharms., Inc. Sec. Litig.*,
 697 F.3d 869 (9th Cir. 2012)....................................................................................8

*In re Silver Wheaton Corp. Sec. Litig.*,
 No. CV15-5146-CAS(JEMX), 2016 WL 3226004 (C.D. Cal. June 6, 2016).......18

*In re U.S. Aggregates, Inc. Sec. Litig.*,
 235 F. Supp. 2d 1063 (N.D. Cal. 2002) .................................................................11

*In re UTStarcom, Inc. Sec. Litig.*,
 617 F. Supp. 2d 964 (N.D. Cal. 2009) ...................................................................15

*In re VeriFone Holdings, Inc. Sec. Litig.*,
 704 F.3d 694 (9th Cir. 2012)..............................................................................9, 15

*In re Verisign, Inc., Derivative Litig.*,
 531 F. Supp. 2d 1173 (N.D. Cal. 2007) ...................................................................5

*In re WageWorks, Inc., Sec. Litig.*,
 No. 18-CV-01523-JSW, 2020 WL 2896547 (N.D. Cal. June 1, 2020).................19

*In re Wet Seal, Inc. Sec. Litig.*,
 518 F. Supp. 2d 1148 (C.D. Cal. 2007)....................................................................8

*John Lechner v. Infusystem Holdings, Inc.*,
 No. 216CV08295ODWAGRX, 2017 WL 11593803
 (C.D. Cal. Dec. 15, 2017)................................................................................18, 20

*Limantour v. Cray Inc.*,
 432 F. Supp. 2d 1129 (W.D. Wash. 2006)................................................................8

*Lloyd v. CVB Fin. Corp.*,
 811 F.3d 1200 (9th Cir. 2016)................................................................................20

*Loos v. Immersion Corp.*,
 762 F.3d 880 (9th Cir. 2014)..................................................................................20

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011) ...............................................................................5, 17

*McGee v. Am. Oriental Bioengineering, Inc.*,
    2014 WL 12586107 (C.D. Cal. Sept. 23, 2014)........................................8

*Mendoza v. HF Foods Grp. Inc.*,
    2021 WL 3772850 (C.D. Cal. Aug. 25, 2021)..........................................8

*Middlesex Retirement Sys. v. Quest Software Inc.*,
    527 F. Supp. 2d 1164 (C.D. Cal. 2007)....................................................8

*Mineworkers' Pension Scheme v. First Solar Inc.*,
    881 F.3d 750 (9th Cir. 2018)..................................................................20

*Mulderrig v. Amyris, Inc.*,
    492 F. Supp. 3d 999 (N.D. Cal. 2020) ..............................................13, 16

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003)..................................................................17

*Oklahoma Police Pension & Ret. Sys. v. LifeLock, Inc.*,
    780 F. App'x 480 (9th Cir. 2019) .............................................................7

*Perrin v. SouthWest Water Co.*, No. 2:08-CV-7,
    844-JHN, 2011 WL 10756419 (C.D. Cal. June 30, 2011).....................14

*Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*,
    89 F. Supp. 3d 602 (S.D.N.Y. 2015)......................................................12

*PR Diamonds, Inc. v. Chandler*,
    364 F.3d 671 (6th Cir. 2004)..................................................................10

*Rabkin v. Lion Biotechs.*, Inc.,
    2018 WL 905862 (N.D. Cal. Feb. 15, 2018) ...........................................8

*Robb v. Fitbit Inc.*,
    16-CV-00151-SI, 2017 WL 219673 (N.D. Cal. Jan. 19, 2017)..............12

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*S. Ferry LP, No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008)......................................................................9, 13

*S.E.C. v. Goldfield Deep Mines Co. of Nevada*,
758 F.2d 459 (9th Cir. 1985)............................................................................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ................................................................................4, 9, 17

*Thomas v. Magnachip Semiconductor Corp.*,
167 F. Supp. 3d 1029 (N.D. Cal. 2016) .....................................................14, 16, 18

*United States Sec. & Exch. Comm'n v. Winemaster*,
529 F. Supp. 3d 880 (N.D. Ill. 2021) ....................................................................16

*Webb v. Solarcity Corp.*,
884 F.3d 844 (9th Cir. 2018)..............................................................................18

STATUTES

15 U.S.C. §78j(b)...............................................................................................5

15 U.S.C. §78t(a)...............................................................................................21

15 U.S.C. §78u-4(b)(2)......................................................................................9

15 U.S.C. §78u-4(b)(4)......................................................................................19

OTHER AUTHORITIES

L.R. 11 ...............................................................................................................22

## I.    INTRODUCTION

This is a securities class action on behalf of all persons and/or entities who purchased the securities of Sonder Holdings Inc. ("Sonder" or the "Company") between March 16, 2023 and March 15, 2024, inclusive ("Class Period") pursuant to the Securities Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder.[1]

Sonder leases and operates a variety of accommodations, from fully equipped serviced apartments to hotel rooms.  Throughout the Class Period, Defendants attested to the accuracy of Sonder's financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.  Defendants also made numerous representations regarding Sonder's financial results and condition, including, but not limited to, the Company's valuation of operating lease right of use ("ROU") assets and related items within its financial statements.  On March 15, 2024, however, Sonder announced that its audited financial statement for the 2022 Annual Report and its unaudited consolidated financial statements in 2023 should no longer be relied upon due to "accounting errors related to the valuation and impairment of operating lease ROU assets and related items."  On this news, Sonder's stock price plummeted more than 38%, damaging investors.

The Court should deny Defendants' Motion to Dismiss Amended Class Action Complaint for Violations of the Federal Securities Laws ("Motion").  Contrary to Defendants' assertions, Plaintiff adequately alleges that Defendants: (1) made false and misleading statements regarding Sonder's financial statements and misrepresented the true state of the Company's internal controls; (2) acted with scienter in making their misrepresentations; and (3) made misrepresentations that caused losses for Plaintiff and the class.  Thus, Defendants' Motion should be denied.

---

[1] Defendants are: (1) Sonder; (2) Chief Executive Officer ("CEO") Francis Davidson ("Davidson"); (3) Interim Chief Financial Officer ("CFO") Chris Berry; and (4) CFO Dominique Bourgault ("Bourgault").

## II.   STATEMENT OF FACTS

### A.   Company Background

Sonder claims to be focused on a mission to revolutionize hospitality through tech-enabled service and accommodations. ¶21.[2] Sonder leases and operates a variety of accommodation options — from fully-equipped serviced apartments to hotel rooms — in 43 cities in 10 countries.  *Id.*  Sonder works directly with real estate owners to lease properties.  ¶22.  The Company furnishes and decorates properties to provide a design-led, technology-enabled experience, and then makes the properties available for guests to book directly (through the Sonder app, the Company's website, or its sales personnel) or through indirect channels (such as Airbnb, Expedia, Booking.com, and other online travel agencies).  *Id*.

### B.   ASC 842 Lease Accounting Requirements

ASC 842, or Accounting Standards Codification 842, is an accounting standard under Generally Accepted Accounting Principles ("GAAP").  ¶25.  The standard was issued by the Financial Accounting Standards Board ("FASB"), and it impacts lease accounting and reporting. *Id*.  In February 2016, the FASB issued ASC 842 to require lessees to recognize all leases, with certain exceptions, on the balance sheet. *Id*.  ASC 842 eliminates real estate-specific provisions and modifies certain aspects of lessor accounting. *Id*.  The standard requires that lessees recognize right-of-use assets and lease liabilities on the balance sheet for most leases.  *Id*.  This requirement brings greater transparency related to the financial leverage and capital employed by companies. *Id*.

ASC 842 can be simple to understand, interpret, and apply, particularly for accounting professionals.  ¶26.  ASC 842 requires that lessees recognize assets and

---

[2] Unless otherwise stated, all paragraph ("¶") references are to Plaintiff's Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint"), all emphasis is added, and all internal quotations and citations are omitted.

liabilities on the balance sheet for all leases with terms longer than 12 months. *Id*. ASC 842 also eliminates the classification of leases as either operating leases or finance leases for lessees. *Id*. Instead, lessees must recognize a right-of-use asset and a lease liability for virtually all lease contracts. *Id*. By recognizing essentially all leases on the balance sheet, the standard is intended to provide a more accurate picture of a company's leasing activities and obligations. *Id*.

### C.    ASC 360 (Property, Plant, and Equipment Requirements

ASC 360 is an accounting standard that dates back to 2001. ¶27. ASC 360 includes guidelines on how to account for long-lived assets such as buildings, equipment, or land. *Id*. This standard governs what businesses should do regarding the acquisition, depreciation, impairment, and disposal of these types of assets. *Id*. Additionally, impairment under ASC 360 occurs when the current fair value of an asset is different from the carrying value. *Id*. Testing for impairment is a key part of ASC 360. *Id*. Like ASC 842, ASC 360 can be simple to understand, interpret, and apply, particularly for accounting professionals. *Id*.

### D.    Throughout the Class Period, Defendants Represented That Sonder's Financial Statements Were Accurate and That There Were No Material Changes to the Company's Internal Control Over Financial Reporting

Throughout the Class Period, Defendants made representations regarding the Company's financial results and, in particular, the valuation of the Company's ROU assets and related items. ¶¶29, 30, 33, 34, 37, 38, 41. Defendants further claimed that other than the specified items, "there has been no change in our internal control over financial reporting that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting." ¶¶31, 35, 39, 42. Additionally, CEO Davidson and CFO Bourgault also signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") attesting to the accuracy of Sonder's financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud. ¶¶28, 32, 36, 40.

### E.    The Truth Begins to Emerge

On March 15, 2024, Sonder announced that its audited financial statement for the 2022 Annual Report, and the unaudited consolidated financial statements in 2023 (collectively with the 2022 Annual Report, the "Affected Financial Statements"), should no longer be relied upon due to "accounting errors related to the valuation and impairment of operating lease ROU assets and related items."  ¶44.  Sonder also announced that "the Company's management determined that the valuation of certain ROU lease assets and related items as of and for each of the Non-Reliance Periods had not considered certain relevant impairment indicators and related valuation information impacting the carrying value of such assets and related items, as required by Accounting Standards Codification (ASC) Nos. 842, Leases, and 360, Property, Plant, and Equipment, in addition to related standards and interpretations."  ¶45. Additionally, Sonder stated that it "expects to record material non-cash impairment charges, and related reductions in ROU lease assets and related items, in certain of the Non-Reliance Periods" and that it "expects that the restatements will increase the Company's overall net loss and loss per share in the impacted periods."  *Id*.  On this news, Sonder's stock price plummeted more than 38%, damaging investors.  ¶47.

### III.    STANDARD OF REVIEW

A plaintiff's allegations need only be "plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts must "accept all factual allegations in the complaint as true" and "must consider the complaint in its entirety . . . ."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  Courts must also construe facts "in the light most favorable to the nonmoving party."  *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017).

## IV. PLAINTIFF ADEQUATELY ALLEGES VIOLATIONS OF THE EXCHANGE ACT

Section 10(b) of the Exchange Act makes it unlawful "to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. §78j(b). To state a claim, a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011).

### A. Plaintiff Adequately Alleges Falsity

#### 1. Defendants Concede that Sonder's Financial Statements Were False

Defendants do not dispute that Plaintiff has adequately alleged falsity with respect to the Company's financial statements – and for good reason. "By definition, a restatement corrects financial data that was false when made." *Hemmer Grp. v. SouthWest Water Co.*, 527 F. App'x 623, 626 (9th Cir. 2013); *see also In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1205 (N.D. Cal. 2007) ("In view of [the company's] announcement of the anticipated restatement of its financial statements . . . the court finds that plaintiffs need not allege additional facts to support their claim that defendants issued false or misleading financial statements."); *In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1084 (N.D. Cal. 2001) ("the existence of restated financial results is sufficient to support plaintiffs' belief that the statements were misstated"). Here, on March 15, 2024, Sonder announced that "the Company's audited consolidated financial statements for the year ended December 31, 2022 . . . and the unaudited condensed consolidated financial statements included in each of the Company's quarterly reports on Form 10-Q filed with the [SEC] . . . in 2023 . . .

should no longer be relied upon due to accounting errors related to the valuation and impairment of operating lease right of use ("ROU") assets and related items."  ¶¶44-45.  Thus, as Defendants concede, Plaintiff has adequately alleged falsity regarding Sonder's financial statements.

**2. Plaintiff Adequately Alleges That Defendants' Misrepresentations Regarding the Company's Internal Controls Were False and Misleading**

Throughout the Class Period, Defendants also misrepresented the true state of the Company's internal controls.  ¶¶28, 31-32, 35-36, 39-40, 42.  Specifically, although Defendants stated that Sonder "previously identified a material weakness in our internal control over financial reporting related to the process to capture and record lease agreements timely and accurately" and that "[m]anagement has concluded that this material weakness in internal control over financial reporting is due to the fact that the Company did not have the adequate resources with the appropriate level of experience and technical expertise to oversee the Company's leasing business processes and related internal controls" (¶¶31, 35, 39, 42), Defendants also claimed that other than discussed above, "***there has been no change in our internal control over financial reporting that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.***" *Id*.  Additionally, CEO Davidson and CFO Bourgault also signed SOX certifications throughout the Class Period attesting to the accuracy of Sonder's financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.  ¶¶28, 32, 36, 40.

These representations, however, were false and misleading.  As Sonder subsequently admitted, "the Company's management determined that the valuation of certain ROU lease assets and related items as of and for each of the Non-Reliance Periods had not considered certain relevant impairment indicators and related valuation information impacting the carrying value of such assets and related items, as required by Accounting Standards Codification (ASC) Nos. 842, Leases, and 360,

Property, Plant, and Equipment, in addition to related standards and interpretations." ¶45.    Additionally, Sonder stated that it "expects to record material non-cash impairment charges, and related reductions in ROU lease assets and related items, in certain of the Non-Reliance Periods" and that it "expects that the restatements will increase the Company's overall net loss and loss per share in the impacted periods." *Id.*

Sonder's subsequent admissions regarding the Company's internal controls and Sonder's restatement rendered Defendants' statements regarding internal controls during the Class Period false and misleading.   Once defendants chose to speak regarding the Company's operations, "they were bound to do so in a manner that wouldn't mislead investors . . . ."  *Berson v. Applied Signal Tech.*, 527 F.3d 982, 987 (9th Cir. 2008); *see also Oklahoma Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 483 (9th Cir. 2019) ("[O]nce defendants choose to tout positive information to the market, they are bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information.").  In claiming that "there has been no change in our internal control over financial reporting that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting" (¶¶31, 35, 39, 42) and that Sonder had disclosed any material changes to the Company's internal control over financial reporting  (¶¶28, 32, 36, 40), Defendants failed to disclose relevant impairment indicators and related valuation information impacting the carrying value of ROU lease assets and related items as required by ASC 842 and 360.  ¶¶45, 49.

Defendants' argument to the contrary fails.  Motion at 19-21.  Although Defendants claim that Plaintiff has not adequately alleged what Defendants failed to disclose, Plaintiff has, in fact, done so by identifying impairment indicators and valuation information impacting the carrying value of ROU lease assets and related

items as required by ASC 842 and 360.  ¶¶45, 49.  These facts – which Defendants did not previously disclose – render Defendants' authorities inapplicable.[3]

Moreover, contrary to Defendants' suggestion, "a restatement is proper where an error has been made in a previously-issued financial statement . . . where there has been (1) a mathematical mistake; (2) mistakes in the application of accounting principles; or (3) oversight or misuse of facts *that existed at the time the financial statements were prepared*."  *In re Commtouch Software Ltd. Sec. Litig.*, 2002 WL 31417998, at *7 (N.D. Cal. July 24, 2002); *see also In re Interpool, Inc. Sec. Litig.*, 2005 WL 2000237, at *5 (D.N.J. Aug. 17, 2005) ("A restatement is specifically not proper for 'new information or subsequent developments' or for 'better insight or improved judgment.'").  Additionally, Defendants' SOX certifications are actionable as false statements of fact.  *See, e.g.*, *Rabkin v. Lion Biotechs.*, Inc., 2018 WL 905862, at *10 (N.D. Cal. Feb. 15, 2018) (finding SOX certifications actionable); *Limantour v. Cray Inc.*, 432 F. Supp. 2d 1129, 1158–60 (W.D. Wash. 2006) (same).  "For these certifications to have any substance, signatories to the certifications must be held accountable for the statements."  *Middlesex Retirement Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1189-1190 (C.D. Cal. 2007).  Thus, Plaintiff has adequately pled falsity.

### B.    Plaintiff Adequately Alleges that Defendants Acted With Scienter

The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires plaintiffs to "state with particularity facts giving rise to a strong inference that the

---

[3] *See, e.g.*, *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 836 (9th Cir. 2022) (holding *under the circumstances of that case that are inapplicable here*, plaintiffs did not sufficiently plead falsity); *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 881 (9th Cir. 2012) (same); *Mendoza v. HF Foods Grp. Inc.*, 2021 WL 3772850, at *10 (C.D. Cal. Aug. 25, 2021) (same); *Abe v. AFCH, Inc.*, 2022 WL 159728, at *7 (C.D. Cal. Jan. 18, 2022) (same); *Cheng v. Activision Blizzard, Inc.*, 2022 WL 2101919, at *11 (C.D. Cal. Apr. 18, 2022) (same); *McGee v. Am. Oriental Bioengineering, Inc.*, 2014 WL 12586107, at *13 (C.D. Cal. Sept. 23, 2014) (same); *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1165 (C.D. Cal. 2007) (same).

defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2); *Tellabs*, 551 U.S. at 314. "In this circuit, the required state of mind is a mental state that not only covers intent to deceive, manipulate, or defraud, but also deliberate recklessness." *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 937 (9th Cir. 2023). Importantly, "courts must consider the complaint in its entirety . . . . The inquiry is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 322-23 (italics in original). "Thus, Tellabs counsels us to consider the totality of circumstances, rather than to develop separately rules of thumb for each type of scienter allegation." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). Moreover, "[t]he Supreme Court's reasoning in Tellabs permits a series of less precise allegations to be read together to meet the PSLRA requirement . . . ." *Id*. "Vague or ambiguous allegations are now properly considered as a part of a holistic review when considering whether the complaint raises a strong inference of scienter." *Id*. Accordingly, in assessing scienter allegations, often "the sum is greater than the parts." *In re VeriFone Holdings, Inc. Sec. Litig*., 704 F.3d 694, 698 (9th Cir. 2012).

A strong inference of scienter arises if, "[w]hen the allegations are accepted as true and taken collectively," a "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324-26. "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the smoking-gun genre, or even the most plausible of competing inferences" – the inference need only be equally plausible to any non-culpable inference. *Id*. at 324. Moreover, "a tie goes to the plaintiffs when there are multiple plausible theories at the pleadings stage of litigation." *Eclectic Props. E., LLC v. Marcus & Millichap Co*., 751 F.3d 990, 999 n.8 (9th Cir. 2014).

### 1.    Defendants' Motivation to Comply with Sonder's Debt Covenants Supports a Strong Inference of Scienter

Defendants' attempt to ensure compliance with Sonder's debt covenants supports a strong inference of scienter.  While insufficient alone to establish scienter, courts have held that the motive to misstate financial results "so as not to violate loan covenants" supports a strong inference of scienter.  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1063-64 (9th Cir. 2000); *see also PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 690 (6th Cir. 2004) (allegations that defendants "were motivated to engage in fraud in order to forestall [the company's] default of its bank loan agreement and to preserve the Company's ability to borrow pursuant to its credit facility" are "probative of scienter").

On March 14, 2014, Sonder announced that "[t]he Company's restatement and the related items discussed in this Form 8-K could have an adverse effect upon the Company's debt, including under the Loan and Security Agreement dated as of December 21, 2022, as amended, with Silicon Valley Bank, a division of First Citizens Bank & Trust Company, and the Note and Warrant Purchase Agreement dated as of December 10, 2021, as amended, with certain private placement investors." ¶45.  Sonder stated further that the Company was "engaging in discussions with its lenders to seek waivers of any noncompliance" and that "[i]f such waivers are not obtained, any such noncompliance may entitle our lenders to terminate any existing commitments to lend, impose increased interest rates, accelerate our outstanding debt obligations, initiate foreclosure proceedings against any assets constituting collateral for such obligations and exercise other rights and remedies available under the terms of our debt agreements." *Id*.  Sonder also said that "[i]f our debt were to be accelerated, the Company may not have sufficient cash or be able to borrow sufficient funds to refinance the debt or sell sufficient assets to repay the debt, which could immediately adversely affect our business, cash flows, results of operations and financial condition." *Id*.

Defendants fail to address these allegations.  These facts demonstrate, however – as the Ninth Circuit has declared – that the motivation "not to violate loan covenants with [the defendant's] principal lender" supports a strong inference of scienter. *Howard*, 228 F.3d at 1063-64; *see also Flynn v. Sientra, Inc.*, 2016 WL 3360676, at *15 (C.D. Cal. June 9, 2016) (holding that the motivation to "prevent a default" on the company's loan supported a strong inference of scienter); *In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, 1071-72 (N.D. Cal. 2002) ("Plaintiff has specifically alleged that improper accounting was motivated, in fact, by the financial ratios in the [company's] loan agreements" and that "absent the fraudulent conduct, [the company] would have violated these loan convents and been subject to the default provisions of the Agreements").  Thus, Plaintiff has adequately alleged motive.

### 2. The Confidential Witnesses Support a Strong Inference of Scienter

Plaintiff can establish a strong inference of scienter through confidential witness ("CW") accounts by satisfying two pleading requirements.  "First, the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge." *NVIDIA*, 81 F.4th at 937.  "Second, those statements which are reported by confidential witnesses . . . must themselves be indicative of scienter." *Id*.

Such is the case here.  First, the CWs here are described with sufficient particularity to establish their reliability and personal knowledge.  ¶¶53-57.  Second, the CW statements are also indicative of scienter. *Id*.  For instance, CW1, who served as a senior leasing analyst at Sonder from August 2022 to February 2024 and who contributed to the implementation of ASC 842 at Sonder, stated that  Deloitte found that the Company's accounting "was garbage."  ¶54.  CW1 stated that when a new lease was entered, under ASC 842, the accounting needed to be forecasted over at least five years.  *Id*.  CW1 stated, however, that no one at Sonder created a simple Excel spreadsheet to conduct this forecasting.  *Id*.  CW1 stated further that the

Company's accountant, Deloitte, found that Sonder had provisions in the leases it entered that permitted rent to be suspended or partially discounted in certain circumstances, or that a cap could be placed upon rent increases. ¶55. CW1 stated that such provisions – along with the fact that Sonder did not engage in rent forecasting – created accounting problems that Sonder did not adequately address. *Id.*

CW1 stated further that these problems were discussed during "many, many meetings" over the course of several months, and that there were so many mistakes that it was faster to start from scratch in most instances than to find mistakes and fix them. ¶56. CW1 stated that most of the C-suite, including the CEO, CFO, and Vice Presidents, participated in these meetings. *Id.* According to CW1, there were first weekly updates, and then later bi-weekly updates, that focused upon these issues, and that all the members of Sonder's leadership were aware of the results of Deloitte's audit. *Id.*

CW1's account is corroborated by CW2, who served as a Senior Lease Accountant from July 2021 to August 2022 and as a Lease Accounting and Administration Manager from August 2022 to May 2024. ¶57. CW2 had been familiar with ASC 842 since 2018, and Sonder had not properly implemented systems in place to comply with ASC 842 when it went public. *Id.* CW2 also stated that leadership at Sonder was "horrible," and that leadership turnover contributed to the problems that Sonder encountered. *Id.* These facts support a strong inference of scienter because they show, at a minimum, that Defendants were deliberately reckless regarding Sonder's financial reporting.[4]

---

[4] Defendants' arguments to the contrary fail. Motion at 13-15. For instance, Defendants claim that the CWs purportedly did not interact with the Individual Defendants while ignoring CW1's allegations that "most of the C-suite, including the CEO, CFO, and Vice Presidents, participated in these meetings" described in the Complaint. ¶56. Additionally, "there is no baseline requirement of [contact with defendants] in order to allege sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 615–16 (S.D.N.Y. 2015); *see also Robb v. Fitbit Inc.*, No. 16-CV-00151-SI, 2017 WL 219673, at *6 (N.D. Cal. Jan. 19, 2017) (even where "plaintiffs' allegations do not directly connect the dots between a CW's knowledge and

### 3.    The Core Operations Inference Supports a Strong Inference of Scienter

The facts alleged also support a strong inference of scienter because they relate to Sonder's core operations.  "The core operations doctrine—the theory that facts critical to a business's core operations ... are known to a company's key officers—can be one relevant part of a complaint that raises a strong inference of scienter." *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1027 (N.D. Cal. 2020); *S. Ferry*, 542 F.3d at 784-86.  For instance, Sonder stated that "[w]e have identified certain policies and estimates as critical to our business operations and the understanding of our past or present consolidated financial condition and results of operations. These policies and estimates are considered critical because they have a material impact, or they have the potential to have a material impact, on our consolidated financial statements and because they require us to make significant judgments, assumptions, or estimates." ¶58. Additionally, according to CW1, approximately 75% of the income that Sonder generated was derived from about 500 locations out of the approximately 2,000 locations involved in the Company's business. *Id*.  Defendants attempt to refute this inference by citing *S. Ferry* (Motion at 17-18), but they conflate *S. Ferry*'s holding for the use of the core operations inference independently to establish scienter as opposed to part of a holistic analysis.  And Defendants' attempt to argue that Sonder's accounting treatment for leases was not necessarily a core operation of the Company fails (Motion at 18) where, as here, Sonder has already acknowledged as much. ¶58. Thus, the fact that the allegations involve Sonder's core operations adds to the strong inference of scienter alleged.  *Azar v. Yelp, Inc.*, No. 18-CV-00400-EMC, 2018 WL 6182756, at *20 (N.D. Cal. Nov. 27, 2018).

---

the individual defendants," this circumstance is not "fatal" and "will not be grounds for dismissing the complaint" if a strong inference of scienter is alleged based upon "a holistic evaluation of the allegations").  Defendants' other criticisms also do not undermine the fact that the accounts further add to the strong inference of scienter alleged.

#### 4. The Magnitude of the Restatement Supports a Strong Inference of Scienter

The magnitude of Sonder's restatement further supports a strong inference of scienter. *See, e.g.*, *In re Leapfrog Enter., Inc. Sec. Litig.*, No. 15-CV-00347-EMC, 2017 WL 732909, at *9 (N.D. Cal. Feb. 24, 2017) (holding that the "timing and size of the impairment" supports a strong inference of scienter); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1042 (N.D. Cal. 2016) (holding that accounting errors that "dramatically affected" the company's financial results supported a strong inference of scienter); *In re Diamond Foods, Inc., Sec. Litig.*, No. C 11-05386 WHA, 2012 WL 6000923, at *7-*8 (N.D. Cal. Nov. 30, 2012) (holding that "the magnitude of the GAAP violations support an inference that defendants acted with the requisite scienter"). Here, Sonder lost nearly $80 million more in 2022 than it previously reported. ¶60. In fact, Sonder's net loss in 2022 was more than $245.03 million – it had previously reported a loss of $165.7 million. *Id*. And Sonder's net loss in 2023 widened to nearly $295.6 million after it filed its 2023 Form 10-K. *Id*. Defendants' argument (Motion at 15-16) overlooks the principle that a restatement is proper based upon "facts ***that existed at the time the financial statements were prepared***." *Commtouch*, 2002 WL 31417998, at *7; *Interpool*, 2005 WL 2000237, at *5. Moreover, that other metrics may have been less affected does not change the fact that a restatement was required.[5] Thus, the magnitude of the restatement adds to the strong inference of scienter alleged.

#### 5. The Departures of Key Executives Bolster the Strong Inference of Scienter Alleged

Coupled with the other allegations of scienter, the departure of several of Sonder's key executives also bolsters the strong inference of scienter alleged. *See, e.g., Bielousov v. GoPro, Inc.*, No. 16-cv-06654-CW, 2017 WL 3168522, at *6 (N.D.

---

[5] Defendants' authority, *Perrin v. SouthWest Water Co.*, No. 2:08-CV-7844-JHN, 2011 WL 10756419 (C.D. Cal. June 30, 2011), stands for the unremarkable proposition that a restatement alone is not indicative of scienter. Plaintiff does not argue otherwise.

Cal. July 26, 2017) (holding that resignation of the company's president bolstered the strong inference of scienter alleged); *In re Impax Laboratories, Inc. Sec. Litig.*, No. C 04-04802 JW, 2007 WL 7022753, at \*9-\*10 (N.D. Cal. July 18, 2007) (holding that resignations that occur in tandem with financial restatements "add one more piece to the scienter puzzle"). Here, on August 22, 2024, Sonder announced that Deeksha Hebbar resigned as Chief Operating Officer, effective August 31, 2024. ¶61. Additionally, on November 4, 2024, Sonder announced that "Dominique Bourgault, our Chief Financial Officer, informed us of his decision to resign from that position, effective December 2, 2024" and that "[o]n November 7, 2024, Adam Bowen, our Chief Accounting Officer, informed us of his decision to resign from that position, effective December 31, 2024." *Id*. Importantly, ***all of these resignations occurred within two months of the filing of Sonder's 2023 Form 10-K, in which the Company provided more information regarding the restatement***. ¶49. Contrary to Defendants' assertion (Motion at 16-17), these facts demonstrate that "the timing of Defendants' departures might suggest that the Company believed Defendants had been involved in wrongdoing with respect to corporate finances," thereby adding to a strong inference of scienter. *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 975-976 (N.D. Cal. 2009).

### 6. Defendants SOX Certifications Add to the Strong Inference of Scienter Alleged

Defendants' SOX certifications also add to the strong inference of scienter alleged. Combined with other allegations, SOX certifications can support a strong inference of scienter. *See, e.g.*, *VeriFone*, 704 F.3d at 707-08 (holding that defendants' false SOX certifications added to the strong inference of scienter alleged). SOX certifications properly add to the scienter calculus because such certifications require executives "to access sufficient reporting information to certify that the information provided did not omit any material facts to make the report not misleading." *Bielousov*, 2017 WL 3168522, at \*7. Here, CEO Davidson and CFO

Bourgault signed SOX certifications attesting to the accuracy of Sonder's financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.   ¶¶28, 32, 36, 40. Accordingly, these facts add to the strong inference of scienter alleged.  *See, e.g.*, *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1027–28 (N.D. Cal. 2020) ("defendants' alleged failure to maintain an effective control environment, and their attestations to the contrary, supports a strong inference of scienter"); *Thomas*, 167 F. Supp. 3d at 1043 (defendants' "signing of Sarbanes-Oxley (SOX) certifications" added to the strong inference of scienter alleged); *see also Howard*, 228 F.3d at 1061 ("when a corporate officer signs a document on behalf of the corporation, that signature will be rendered meaningless unless the officer believes that the statements in the document are true").

### 7. The Simplicity of the Relevant Accounting Standards Bolsters the Strong Inference of Scienter Alleged

The simplicity of the relevant accounting standards also bolsters the strong inference of scienter alleged.  *See, e.g.*, *United States Sec. & Exch. Comm'n v. Winemaster*, 529 F. Supp. 3d 880, 912 (N.D. Ill. 2021) ("if the GAAP rules ... [the defendant is] alleged to have violated are relatively simple, it is more likely that [he was] aware of the violations and consciously or intentionally implemented or supported them, or [was] reckless in this regard"); *In re Medicis Pharm. Corp. Sec. Litig.*, No. CV-08-1821-PHX-GMS, 2010 WL 3154863, at *7 (D. Ariz. Aug. 9, 2010) (strong inference of scienter alleged where the accounting principle was "relatively straightforward and simple").  Here, Plaintiff alleges that ASC 842 can be simple to understand, interpret, and apply, particularly for accounting professionals.  ¶59. Specifically, ASC 842 requires that lessees recognize assets and liabilities on the balance sheet for all leases with terms longer than 12 months.  *Id*.  ASC 842 also eliminates the classification of leases as either operating leases or finance leases for lessees.  Instead, lessees must recognize a right-of-use asset and a lease liability for

virtually all lease contracts. *Id*. Additionally, like ASC 842, ASC 360 can be simple to understand, interpret, and apply, particularly for accounting professionals. *Id*. Thus, these allegations add to the strong inference of scienter alleged.[6]

When considering all of these facts collectively as required under *Tellabs* (551 U.S. at 323), Plaintiffs have adequately alleged scienter.

### 8.    Defendants' Remaining Scienter Arguments Fail

Defendants' other scienter arguments also fail. First, Defendants assert that the absence of stock sales or other motive negates an inference of scienter. Motion at 13. Initially, as demonstrated above, Plaintiff has alleged that Defendants, in fact, were motivated to ensure compliance with Sonder's debt covenants, which supports a strong inference of scienter. ¶45; *Howard*, 228 F.3d at 1063-64. Moreover, Defendants' argument also fails because even if had Plaintiff alleged no motive, the Supreme Court has repeatedly declared that the "absence of a motive allegation" is "not dispositive." *Matrixx*, 563 U.S. at 48; *see also Tellabs*, 551 U.S. at 325 ("the absence of a motive allegation is not fatal"). Indeed, "[s]cienter can be established even if the officers who made the misleading statements did not sell stock during the class period." *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003); *see also In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 707 (9th Cir. 2021) ("Allegations of suspicious stock sales . . . are not needed where, as here, other allegations in the complaint raise a strong inference of scienter."). Thus, "Defendants' suggestion that the lack of insider stock

---

[6] Defendants attempt to challenge Plaintiff's allegations by improperly seeking judicial notice of documents for the truth of the matter asserted. *See*, *e.g.*, Motion at 5, 10-11; *see also* Plaintiff's Opposition to Defendants' Request for Judicial Notice. Defendants also attempt to rely heavily upon *Bouzaglo v. Inspirato Inc.*, 2024 WL 3738813 (D. Colo. July 16, 2024). Defendants fail to note, however, that the court acknowledged that Plaintiff's theory that the company's "past problems with accounting and internal controls" could be argued "put Defendants on notice that a failure to correct course might result in future misstatements, thus constituting recklessness towards the prospect of future financial misstatements," (*id*. at 8), but that the complaint at issue lacked the specificity sought by the court, and that an amended complaint has been filed in that case.

sales . . . negates scienter is contrary to controlling case law." *Flynn*, 2016 WL 3360676, at *15. Indeed, "there are several explanations for why an individual defendant would not sell stock even if she knew about false financial statements, such as a desire to avoid drawing the market's attention to the problem." *Thomas*, 167 F. Supp. 3d at 1044. "Further, even if an individual who *knows* of company misstatements may on the whole be less likely to keep her stock, the same cannot be said of an individual who is merely deliberately reckless in failing to be aware of such misstatements." *Id*. (italics in original). Accordingly, "the Court cannot conclude that Defendants acted without scienter simply because they did not sell their stock during the relevant period." *Davis v. Yelp, Inc.*, No. 18-CV-00400-EMC, 2021 WL 4923359, at *13 (N.D. Cal. Sept. 17, 2021).[7]

Second, contrary to Defendants' assertion (Motion at 12), Deloitte's involvement does not negate the inference of scienter alleged. Indeed, courts have repeatedly rejected this argument. *See, e.g.*, *S.E.C. v. Goldfield Deep Mines Co. of Nevada*, 758 F.2d 459, 467 (9th Cir. 1985) ("If a company officer knows that the financial statements are false or misleading and yet proceeds to file them, the willingness of an accountant to give an unqualified opinion with respect to them does not negate the existence of the requisite intent or establish good faith reliance."); *In re Silver Wheaton Corp. Sec. Litig.*, No. CV15-5146-CAS(JEMX), 2016 WL 3226004, at *11 (C.D. Cal. June 6, 2016) ("many courts have found adequate allegations of scienter even when the defendants had obtained clean audit opinions from their independent auditors"); *Diamond Foods*, 2012 WL 6000923, at *8 (an auditor's "unqualified audit opinion does not negate an inference of scienter" because company senior management "had an independent duty to ensure compliance with

---

[7] *See* Motion at 13 (citing *Webb v. Solarcity Corp.*, 884 F.3d 844 (9th Cir. 2018), *John Lechner v. Infusystem Holdings, Inc.*, No. 216CV08295ODWAGRX, 2017 WL 11593803 (C.D. Cal. Dec. 15, 2017); *Bouzaglo v. Inspirato Inc.*, No. 1:23-CV-00438-RMR-SBP, 2024 WL 3738813 (D. Colo. July 16, 2024)).

GAAP and maintain effective internal controls" that "cannot be delegated" to the auditor).  Thus, Plaintiff has adequately alleged scienter.

### C.    Plaintiff Adequately Alleges Loss Causation

Plaintiff has also adequately alleged loss causation.  The PSLRA provides that "the plaintiff shall have the burden of proving that the act or omission of the defendant alleged . . . caused the loss for which the plaintiff seeks to recover damages."  15 U.S.C. §78u-4(b)(4).  To adequately plead loss causation, a plaintiff need only "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).  Thus, loss causation pleading requirements "are not meant to impose a great burden upon a plaintiff."  *Id*.

Plaintiff has satisfied this standard.  On March 15, 2024, Sonder announced that its audited financial statement for the 2022 Annual Report, and the unaudited consolidated financial statements in 2023, should no longer be relied upon due to "accounting errors related to the valuation and impairment of operating lease ROU assets and related items."  ¶¶44-45.  On this news, Sonder's stock price plummeted more than 38%, damaging investors.  ¶47.  These allegations sufficiently provide Defendants "with some indication of the loss and the causal connection that the plaintiff has in mind."  *Dura*, 544 U.S. at 347.

Defendants contend that although Sonder announced the need to restate in March 2024, the details of the restatement were not disclosed until later, which purportedly forecloses loss causation.  Motion at 21-22.  Contrary to Defendants' argument, however, "a corrective disclosure need not reveal the full scope of the defendant's fraud in one fell swoop; the true facts concealed by the defendant's misstatements may be revealed over time through a series of partial disclosures."  *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020); *see also In re WageWorks, Inc., Sec. Litig.*, No. 18-CV-01523-JSW, 2020 WL 2896547, at *8 (N.D. Cal. June 1, 2020) ("defendants need not reveal the full extent of the fraud for the

market to react to the revelations"). Indeed, Defendants' own cases defeat their argument. In *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018), the court held that "[d]isclosure of the fraud is not a sine qua non of loss causation, ***which may be shown even where the alleged fraud is not necessarily revealed prior to the economic loss***." *Id*. at 753-54. Similarly, in *Loos v. Immersion Corp.*, 762 F.3d 880 (9th Cir. 2014), *as amended* (Sept. 11, 2014), the court held that "a securities fraud plaintiff is not required to allege an outright admission of fraud to survive a motion to dismiss." *Id*. at 888-89.[8]

The Ninth Circuit's decision in *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200 (9th Cir. 2016), is instructive. In *Lloyd*, the Court held that loss causation was adequately pled through a combination of two partial disclosures: (1) the announcement of an SEC subpoena – which, in and of itself, was not a corrective disclosure, but prompted a sharp stock price decline; and (2) the subsequent announcement of loan charge-offs – which was a corrective disclosure, but was not accompanied by any substantial stock price decline. *Id*. at 1210-11. Indeed, "any other rule would allow a defendant to escape liability" by making an initial announcement "and then waiting until the market reacted before revealing that prior representations . . . were false." *Id*. at 1210; *see also Baer v. Shift4 Payments, Inc.*, No. 5:23-CV-3206, 2024 WL 3836676, at *14 (E.D. Pa. Aug. 14, 2024) ("Shift4 announced that part of its prior financial statements could no longer be relied upon and that a restatement was forthcoming. On this news, the share price dropped. This, coupled with the subsequent restatement owning up to the material misstatement, is enough to *plead* loss causation.") (italics in original). Thus, Defendants' argument fails.

---

[8] Defendants cite *John Lechner v. Infusystem Holdings, Inc.*, No. 216CV08295ODWAGRX, 2017 WL 11593803, at *10 (C.D. Cal. Dec. 15, 2017), but in *Lechner*, the court questioned whether loss causation had been adequately alleged based upon the facts in that case. *Id*. at *10. Because Plaintiff has done so here, *Lechner* is inapplicable.

### D.   Plaintiff Adequately Alleges Control Person Liability

Contrary to Defendants' assertion (Motion at 22), Plaintiff has adequately pled a primary violation and has also sufficiently alleged the Individual Defendants' control over the Company.  ¶¶12-20, 84-87.  Thus, Plaintiff has adequately alleged a control person claim under Section 20(a) of the Exchange Act.  15 U.S.C. §78t(a).

## V.   CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion. Alternatively, if the Court grants any portion of the Motion, Plaintiff respectfully requests leave to amend. *See Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("In this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error.").

DATED:  April 7, 2025                    **GLANCY PRONGAY & MURRAY LLP**

By:  */s/ Ex Kano S. Sams II*
Robert V. Prongay
Ex Kano S. Sams II
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  rprongay@glancylaw.com
            esams@glancylaw.com

*Attorneys for Plaintiff Tad Park*

## **CERTIFICATE OF COMPLIANCE (L.R. 11-6.2)**

The undersigned, counsel of record for Plaintiff, certifies this brief contains 6,897 words, which complies with the word limit of 7,000 words set forth within L.R. 11-6.1.

Dated: April 7, 2025                                        *s/ Ex Kano S. Sams II*
                                                            Ex Kano S. Sams II

## PROOF OF SERVICE BY ELECTRONIC POSTING

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On April 7, 2025, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 7, 2025.


*/s/ Ex Kano S. Sams II*
Ex Kano S. Sams II