**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
SUSAN S. MUCK (SBN 126930)
  Susan.Muck@wilmerhale.com
KEVIN P. MUCK (SBN 120918)
  Kevin.Muck@wilmerhale.com
WILLIAM Z. BRENC (SBN 318544)
  William.Brenc@wilmerhale.com
50 California Street, Suite 3600
San Francisco, California 94111
Telephone: (628) 235-1000

**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
JESSICA LEWIS (SBN 302467)
  Jessica.Lewis@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAWSHEEN DUFFAYDAR, Individually and on behalf all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>SONDER HOLDINGS INC., FRANCIS DAVIDSON, CHRIS BERRY, and DOMINIQUE BOURGAULT,<br><br>        Defendants. | Case No. 2:24-cv-02952-SB (JCx)<br>[c/w: 2:24-cv-04798-MWF (JCx)]<br><br>**DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

Defendants Sonder Holdings, Inc. ("Sonder"), Francis Davidson, Chris Berry, and Dominique Bourgault (together, "Defendants") submit this Notice of Supplemental Authority in Support of their Motion to Dismiss (Dkt. 49) to notify the Court of a Report and Recommendation ("Report and Recommendation") granting the motion to dismiss with prejudice in *Bouzaglo v. Inspirato Inc.* ("*Inspirato*"), No. 1:23-cv-00438-RMR-SBP (D. Colo.) (Dkt. 73), which was issued on August 11, 2025, after Defendants filed their Reply in Support of their Motion to Dismiss (Dkt. 52).  The Report and Recommendation is attached as **Exhibit A**.

As Defendants explained in their motion to dismiss briefing (*see* Dkt. 49-1 at 11; Dkt. 52 at 4-5), the same counsel that represents Plaintiff in this matter are also counsel in *Inspirato*, the claims in *Inspirato* are substantially similar to those in this case, and the court in *Inspirato* dismissed the prior complaint in that case with leave to amend.  *See Bouzaglo v. Inspirato Inc.*, 2024 WL 3738813 (D. Colo. July 16, 2024), *report and recommendation adopted*, *Koch v. Inspirato Inc.*, 2024 WL 4591328 (D. Colo. Sept. 23, 2024).  In opposing the motion to dismiss, Plaintiff attempted to distinguish that earlier decision by noting that an amended complaint had been filed in that matter.  Dkt. 51 at 17 n.6.  The Report and Recommendation addresses that amended complaint.

The discussion at pages 12-21 of the Report and Recommendation is relevant to Defendants' arguments that Plaintiff has failed to plead facts establishing a strong inference of scienter.  *See* Dkt. 49-1 at 8-19; Dkt. 52 at 2-8.  The conclusion at page 23 of the Report and Recommendation that the *Inspirato* complaint be dismissed with prejudice because amendment "would be futile" is relevant to the similar argument advanced by Defendants in this case.  *See* Dkt. 52 at 11.

DATED:  August 13, 2025

Respectfully submitted,

WILMER CUTLER PICKERING HALE AND DORR LLP

By:  _/s/ Jessica Lewis_
                    Jessica Lewis

_Attorneys for Defendants_

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-00438-RMR-SBP

ILAN BOUZAGLO and KEITH KOCH, *individually and on behalf of all others similarly situated*,

      Plaintiffs,

v.

INSPIRATO INCORPORATED, BRENT HANDLER, and R. WEBSTER NEIGHBOR,

      Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Susan Prose, United States Magistrate Judge**

This matter comes before the Court for a Report and Recommendation on Defendants' (collectively, "Inspirato") December 11, 2024 Motion (ECF No. 66) to Dismiss Second Amended Class Action Complaint, which was referred to the undersigned by order dated December 12, 2024. ECF No. 69. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(b). After reviewing the Motion, the entire case file, and the applicable case law, the court respectfully **RECOMMENDS** that the Motion be **GRANTED**.

**BACKGROUND**

The following facts are drawn from the docket, the Motion, the court's report and recommendation regarding Defendants' previous motion to dismiss the first amended complaint, ECF No. 48, and the second amended complaint in this matter ("SAC"), ECF No. 64, and except as otherwise noted, are not disputed for the purpose of ruling upon the Motion.

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 39    Filed 08/13/25    Page 6 of 28    Page ID
#:981

In February 2022, Inspirato became a publicly-traded corporation through a merger with a pre-existing private business entity. SAC ¶ 21. On May 12, 2022, Inspirato filed a Form 8-K with the Securities and Exchange Commission ("SEC"), reporting its revenues and profits (and losses) for the first financial quarter of 2022. *Id.* ¶ 37. The following day, Inspirato filed its Form 10-Q with the SEC, tendering various financial statements, along with information about Inspirato's implementation of "generally accepted accounting principles" ("GAAP"). *Id.* ¶ 38. The Form 10-Q noted that in 2019, the Financial Accounting Standards Board issued an advisement known as "ASC 842" about how certain kinds of leases—a common aspect of Inspirato's business practices—should be accounted for. Inspirato's May 2022 Form 10-Q indicated that the company "adopted ASC 842 as of January 1, 2022" and provided certain information about how Inspirato had implemented the instructions of ASC 842.[1] On August 8, 2022, Inspirato filed its Form 8-K covering the second quarter of 2022, and on August 10, 2022, filed its Form 10-Q for that quarter, reporting similar information as that disclosed on the May 2022 forms. *Id.* ¶¶ 39-40.

In November 2022, Inspirato filed its Forms 8-K and 10-Q for the third quarter of 2022. In those forms, Inspirato reported that its Audit Committee had determined that the financial

---

[1] The May 2022 Form 10-Q also disclosed that Inspirato had discovered "material weaknesses in internal control over financial reporting" as of March 31, 2022. Those weaknesses were attributed to the fact that Inspirato "lacked a sufficient number of personnel with the appropriate level of knowledge and experience in the application of GAAP, including the application of new accounting standards," among other defects. Nevertheless, the Form 10-Q set forth the remediation measures that Inspirato had undertaken to address those weaknesses and advised that "notwithstanding the material weaknesses," the financial statements included in the May 2022 Form 10-Q "fairly state, in all material respects, our financial position . . . in conformity with GAAP." *Id.* ¶ 38.

2

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 39    Filed 08/13/25    Page 7 of 28    Page ID
#:982

statements it had issued for the first and second quarters of 2022—those statements in the May and August 2022 Forms 8-K and 10-Q—"should no longer be relied upon." Inspirato explained that it had determined that it had incorrectly applied ASC 842 to its accounting for leases during those periods and that, as a result, it had understated its liabilities by as much as 9% in its earlier filings. Inspirato explained that it "intends to restate" the financial statements for those time periods in amended filings and recommended that investors not rely on the existing Form 8-K and 10-Q for those periods. *Id.* ¶ 84. As a result of the November 2022 advisement, Inspirato's stock price declined by 11.89%.[2] *Id.* ¶ 86.

The plaintiffs, a class comprised of Inspirato's shareholders during the period at issue (collectively, "Plaintiffs"), bring this action alleging claims of securities fraud against Inspirato and its executives pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, and "control person liability" claims pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against the individual Defendants. Plaintiffs allege that because of Inspirato's misapplication of ASC 842, the financial information contained in the Forms 8-K and 10-Q for the first and second quarters of 2022 were materially misleading. Plaintiffs further allege that the individual Defendants responsible for those filings, Mr. Handler as Inspirato's Chief Executive Officer and Mr. Neighbor as Inspirato's Chief Financial Officer, made those false statements with scienter.

In support of their scienter allegations, Plaintiffs rely on information derived from several

---

[2] Subsequent filings and public statements caused the stock to decline further. *Id.* ¶¶ 87-91. The court's reading of the Amended Complaint seems to indicate that the stock price was $2.27 per share prior to the November 2022 announcement, and fell to $1.41 as of December 16, 2022, a total decline of approximately $0.86 per share or 37.8%. These subsequent declines appear to relate to the same accounting issues, however.

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 59    Filed 08/13/25    Page 8 of 28    Page ID
#:983

"confidential witnesses" employed by Inspirato. The statements given by Confidential Witnesses ("CWs") 1 and 2 were previously discussed in ruling on Defendants' previous motion to dismiss Plaintiffs' first amended complaint. As stated in the recommendation regarding that motion, CW 1 is identified as an Accounting Manager who worked for Inspirato between 2019 and 2021, and who states that Mr. Handler "believed that he did not have to comply with [GAAP] and would "cut corners to get around GAAP" and "constantly sought ways to be 'creative' with the Company's accounting," instructing accountants to post journal entries "so they looked the way [Mr. Handler] wanted, not how GAAP required." *Id.* ¶ 49. CW 2 is identified as an IT Manager who worked at Inspirato from 2018 to 2023, and who states that as of 2020, Inspirato "had systems that the Company did not properly identify as part of its record-keeping process" and that "there were a lot of manual entries made [in Inspirato's financial reporting system] and no checks and balances on these processes." CW 2 further stated that Mr. Neighbor was "extremely involved in meetings and issues that involved financial issues" during 2022, but that Inspirato's executives "did not prioritize the Company's internal controls, nor did they prioritize having sufficient qualified personnel to handle the Company's accounting issues." *Id.* ¶¶ 55-57.

Plaintiffs also include statements from several new CWs in the SAC. CW 3 is identified as having worked at Inspirato in several positions, including Manager, Brand Strategy and Content; Senior Manager, Brand Strategy; Director, Corporate Strategy; and Director, Strategy and Operations, from March 2016 to November 2022. CW 3 worked closely with Handler since 2019 on new product initiatives and also worked closely with Neighbor. *Id.* ¶ 58. CW 3 claims that Handler "would embellish information related to specific data," including picking out information when building pitch materials "that made things sound as good as possible without

4

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 59 of 24 Filed 08/13/25    Page 9 of 28    Page ID
#:984

providing a complete picture of the information," and that attorneys would have to correct these embellishments; CW 3 also claims that Handler "was not interested in information that was not favorable to the [c]ompany" and that Handler was accustomed to "skirting around the truth and inflating numbers," noting that the company's legal department "found statements that CEO Handler would make or would propose to make that the legal department prohibited CEO Handler from making." *Id.* ¶¶ 59-62. CW 3 further notes that most of Inspirato's executive team "did not have extensive experience in the fields they were managing," that the company was "chaotic and mismanaged," that there was a "rotating door" of CFOs at the company, and that the company's accounting was "always an afterthought." *Id*. Ultimately, CW 3 claims that these circumstances "contributed to the decision of former CFO Michelle Shewchuk to quit," that the subsequent CFO, Mark Hays, "was terminated because of a lack of experience in taking a company public," and that the company was reckless with money, devoted resources to new products without conducting tests, and did not have a real C-suite. *Id*.

CW 4 worked at Inspirato from October 2020 to January 2023 as a Senior Financial Analyst and focused primarily on modeling Inspirato's subscription revenue. CW 4 regularly attended meetings with company executives, including the CEO and CFO. CW 4 states that CEO Handler exclaimed at the end of one meeting "God, I was not meant to run a company this big." *Id.* ¶ 64.

CW 5 worked at Inspirato from August 2020 to September 2023 in various accounting capacities and specifically worked on issues related to the company's implementation of ASC 842. CW 5 says that once the company adopted ASC 842, CW 5 performed all of the company's lease accounting even though CW 5 was hired as a staff accountant. *Id.* ¶¶ 64-66. CW 5 also

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 59    Filed 08/13/25    Page 10 of 28    Page ID
#:985

says that the company never properly set up the system that was supposed to calculate the company's lease accounting in accordance with ASC 842, and that when the company attempted to initiate the system, it "malfunctioned and wreaked havoc on Inspirato's software system." *Id.* ¶ 67. CW 5 also notes that all of the company's lease accounting had to be performed manually because the company "had unusual stipulations and agreements contained in each lease" and that the company failed to "book deferred rent" as a result; accordingly, Inspirato booked deferred rent at the end of 2021 even though, according to CW 5, the company should have been booking deferred rent on a monthly basis for some time before this. *Id.* ¶ 68. CW 5 also says that "for an entire year, [CW 5] never had a manager" and that CW 5 and another senior accountant handled all of the company's leases on their own. CW 5 notes that Phil Yoo, the company's former controller, realized that there was a "massive problem" with the company's lease accounting, but states that he resigned shortly thereafter. *Id.* ¶ 69.

CW 5 also interacted with and corresponded with Neighbor on multiple occasions. CW 5 states that he or she informed Neighbor that the company "lacked internal controls, review processes, and managers" and told him that no one ever looked at the "month-end close and book journal entries" performed by accounting personnel, which would permit the personnel to post "whatever numbers they wanted and no one would ever know if they were right or wrong." CW 5 further states that he or she sent a "very lengthy email in the beginning of 2021" to Neighbor in which these concerns were expressed and that Neighbor "claimed he would look into fixing the issues." *Id.* ¶ 70. CW 5 also says that he or she had conversations with CFO Neighbor "regarding the misapplication of ASC 842," including a conversation when CW 5 started at the company. Finally, CW 5 also recalls that in the fall of 2022, the company held a "large meeting with all

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 59 of 74 filed 08/13/25    Page 11 of 28   Page ID
#:986

managers, account executives, and everyone involved in lease accounting" during which the problems with lease accounting were discussed, the participants acknowledged that the problems amounted to a "big issue, and it's wrong," and that Neighbor was a participant during this meeting. *Id.* ¶ 71.

CW 6, who served as the Vice President of Revenue Management and Channel Distribution at Inspirato from December 2021 to April 2023, had regular meetings with Handler and Neighbor. CW6 states that Handler and Neighbor were "micromanagers and very directive" who were "engaged" and "had a lot of strong opinions," but with no real data to back them up. *Id.* ¶ 72.

CW 7, who served as the vice president of I.T. at Inspirato from August 2014 to July 2023, "corroborate[s] the accounts of CW2 and CW6" and describes Handler as "hands-on." *Id.*

Plaintiffs filed suit before this court on February 16, 2023, ECF No. 1, amending the initial complaint on August 28, 2023. ECF No. 31. Defendants moved to dismiss this first amended complaint on October 27, 2013. ECF No. 33. The court recommended granting Defendants' motion without prejudice to refiling on July 16, 2024, finding that Plaintiffs had failed to adequately plead scienter in asserting their claims. July 2024 Recommendation, ECF No. 48. The court indicated that it would consider a motion to amend if Plaintiffs chose to file one. *Id.* The recommendation was adopted on September 23, 2024. ECF No. 52.

On October 24, 2024, Plaintiffs moved to amend the complaint. ECF No. 54. The court denied this motion without prejudice on procedural grounds. ECF No. 56. Plaintiffs again filed an unopposed motion to amend the complaint on November 5, 2024. ECF No. 60. The court granted Plaintiffs' motion to amend the complaint on the same day. ECF No. 63. Plaintiffs' SAC

7

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 59 of 74 08/13/25    Page 12 of 28   Page ID
#:987

was filed on November 6, 2024. SAC, ECF No. 64.

On December 11, 2024, Defendants moved to dismiss the SAC.[3] Motion, ECF No. 66.

Plaintiffs responded on January 3, 2025. Response, ECF No. 71. Defendants replied on February

6, 2025. Reply, ECF No. 72.

**LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 12(b)(6), defendants can move to dismiss for

"failure to state a claim upon which relief can be granted." In deciding a motion under Rule

12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these

allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120,

1124-25 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).

Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation

of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (internal citation omitted). "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation

marks omitted). That is, the complaint must include well-pleaded facts that, taken as true,

"allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.*

---

[3] Defendants include an appendix of nine exhibits with the Motion, *see* ECF No. 66-1, arguing
that the court's consideration of these exhibits would not convert the Motion into one for
summary judgment. Motion at 3 n.2. The court finds it unnecessary to refer to this appendix in
ruling upon the Motion and therefore need not address this point.

8

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 59    Filed 08/13/25    Page 13 of 28    Page ID
#:988

The *Twombly/Iqbal* pleading standard first requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* at 679. It next requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* In this analysis, courts "disregard conclusory statements and look only to whether the remaining factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## ANALYSIS

### I.    Claims as Against Inspirato and the Individual Defendants

To adequately plead a claim for securities fraud under SEC Rule 10b-5, the Plaintiffs must allege facts showing: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011) (quotation omitted). The Defendants' motion challenges the sufficiency of the Plaintiffs' allegations as to the scienter element.

To adequately plead the scienter requirement, the plaintiffs must adduce facts indicating

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 59 of 24 Filed 08/13/25    Page 14 of 28   Page ID
#:989

that the defendants acted with "a mental state embracing intent to deceive, manipulate, or

defraud." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1109 (10th Cir. 2015) (quoting *Ernst*

*& Ernst v. Hochfelder*, 425 U.S. 193 n.12 (1976)). The touchstone inquiry is whether the

misrepresentations were "intentionally false or at least recklessly made." *Id.* at 1113. To be

reckless, the defendants' conduct must be "an extreme departure from the standards of ordinary

care, and which presents a danger of misleading buyers or sellers that is either known to the

defendant or is so obvious that the actor must have been aware of it." Put differently,

"[n]egligence, even gross negligence, is not sufficient; something similar to 'conscious disregard'

is required." *Id.* at 1113 (citation omitted).

The Private Securities Litigation Reform Act requires a complaint alleging securities

fraud to "state with particularity facts giving rise to a strong inference that the defendant acted

with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The requirement of a "strong"

inference of scienter elevates the plaintiff's pleading burden for that element over the normal

"plausibility" standard of Fed. R. Civ. P. 12(b)(6) and cases like *Iqbal*. To determine whether the

"strong inference" requirement is satisfied, the court "must engage in a comparative evaluation;

it must consider not only inferences urged by the plaintiff, [ ] but also competing inferences

rationally drawn from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.

308, 314 (2007). The inquiry is "inherently comparative: How likely is it that one conclusion, as

compared to others, follows from the underlying facts?" *Id.* at 323. To qualify as "strong," the

inference of scienter "must be more than merely 'reasonable' or 'permissible'—it must be cogent

and compelling, thus strong in light of other explanations. A complaint will survive [ ] only if a

reasonable person would deem the inference of scienter cogent and at least as compelling as any

10

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 59    Filed 08/13/25    Page 15 of 28    Page ID
#:990

opposing inference one could draw from the facts alleged." *Id.* at 324.

This court previously granted Defendants' motion to dismiss the first amended complaint, finding that Plaintiffs had failed to adequately plead the necessary element of scienter in asserting their claims. *See* July 2024 Recommendation. Plaintiffs have now filed the SAC, updating and adding material to the first amended complaint in order to bolster their allegations; they now argue that the operative complaint cures the deficiencies identified by this court. *See* Response at 1. Accordingly, the first question for this court to decide is whether Plaintiffs have now sufficiently pled scienter by curing the deficiencies identified in the court's recommendation regarding the first amended complaint. If Plaintiffs have not done so, then the SAC must be dismissed as well.

Plaintiffs' updates to the SAC include further background on who defendants Handler and Neighbor are, SAC ¶¶ 13-14, further background on lease accounting requirements under ASC 842, *id*. ¶¶ 33-34, further background on Inspirato's lease agreements, *id*. ¶¶ 35-36, and further allegations regarding Handler's selling of stocks in August 2022. *Id*. ¶¶ 41-42. Plaintiffs' updates also include an extended discussion of scienter in which Plaintiffs argue that Handler exhibited scienter by selling stocks in August 2022, *id*. ¶¶ 45-47; that Defendants' access to information and hands-on management style support scienter, *id*. ¶ 72; that the company's core operations support scienter, *id*. ¶¶ 73-75; that substantial remedial actions taken by the company support scienter, *id*. ¶¶ 76-77; that the simplicity of applicable accounting principles supports scienter, *id*. ¶ 78; and that Neighbor's "secret" termination supports scienter. *Id*. ¶¶ 79-82. Plaintiffs additionally cite several new confidential witness sources in support of these arguments. *Id*. ¶¶ 58-71. Plaintiffs' SAC, though it includes other minor edits, is otherwise

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 52 of 24 Filed 08/13/25    Page 16 of 28    Page ID
#:991

substantially similar to the now-dismissed first amended complaint.

In recommending that the first amended complaint should be dismissed, this court entered into an extended discussion and analysis of the Tenth Circuit's decisions in *Gold Resource* and *Adams*. *See Gold Res.*, 776 F.3d 1103; *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083 (10th Cir. 2003). The court again finds that analysis applicable here.

In dismissing the first amended complaint, the court cited *Gold Resource* for the proposition that "allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim . . . . Only where such allegations are coupled with evidence that the violations or irregularities were the result of the defendant's fraudulent intent to mislead investors may they be sufficient to state a claim." *Gold Res.*, 776 F.3d at 1113 (citing *City of Phila. v. Fleming Cos., Inc.*, 264 F.3d 1245, 1261 (10th Cir. 2001)). The court then contrasted the facts in *Gold Resource* with the facts in *Adams*, noting that the Tenth Circuit had performed a similar analysis in *Gold Resource* and had concluded that unlike in *Adams*, the *Gold Resource* plaintiff pointed to little more than GAAP violations alone and had not identified "other particularized facts indicating that a key operation of the company was losing money, [the defendant executives] knew that fact, and [they] falsely reported a profit for it." *Id*. In dismissing the plaintiff's claims, the Tenth Circuit had also noted that the record in *Gold Resource* revealed "other plausible inferences [besides fraud] arising from the facts stated in the amended complaint," such as the fact that there was often a delay of several months before discrepancies would be noticed by the customer and relayed to officials of the defendant, and that "a prudent executive would want to [take additional time] to investigate and confirm a claimed discrepancy before disclosing it publicly." *Id.* at 1114-15.

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 53    Filed 08/13/25    Page 17 of 28   Page ID
#:992

This court concluded that a fair reading of the first amended complaint indicated that it fell closer to the *Gold Resource* example, alleging GAAP violations but not tying those violations to any broader scheme or more detailed assertions of knowledge that would permit a reasonable inference of the Defendants' scienter. July 2024 Recommendation at 9-10. The court noted that the plaintiff in *Adams* asserted facts showing why it was in the defendants' interest to artificially prop up the stock price (because both a secondary offering and upcoming merger were dependent upon the stock's price remaining high), but in the first amended complaint, Plaintiffs had not identified any imminent business transactions, private trading by Inspirato's executives, or any other unusual circumstances that would suggest a motive for Inspirato's executives to perpetrate fraud. *Id*.

Although Plaintiffs have updated their allegations, adding new material to the complaint, Plaintiffs have still only alleged violations while failing to identify any imminent business transactions or other, similar unusual circumstances that would suggest a motive for Inspirato's executives to perpetrate fraud. For example, Plaintiffs have included further allegations regarding stock trading by Handler. However, these factual allegations on their own do not sufficiently establish a "strong inference" that Handler acted with scienter. "While suspicious insider stock trading is evidence of motive and weighs in favor of inferring fraudulent intent, the amount of profit realized through executive stock sales, standing alone, is insufficient to support an inference of scienter." *Smallen v. The W. Union Co.*, 950 F.3d 1297, 1310 (10th Cir. 2020). Therefore, Handler's trading, at least on its own, is insufficient to support an inference of scienter.

Furthermore, "[t]o determine whether trading activity is suspicious, courts consider

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 54    Filed 08/13/25    Page 18 of 28    Page ID
#:993

several factors, including 'the amount of profit from the sales, the portion of stockholdings sold, the change in volume of insider sales, and the number of insiders selling.'" *Id*. (quoting *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 74-75 (2d Cir. 2001)). Here, Handler is the only insider alleged to have engaged in trading during the period at issue, and Plaintiffs' allegations do not plausibly explain whether there was a change in volume of insider sales or what portion of Handler's (let alone other insiders') stockholdings were sold. While it is true that Plaintiffs allege that Handler sold hundreds of thousands of dollars worth of stock in August 2022, in *Smallen*, one insider sold stock for proceeds of more than $12 million, yet the Tenth Circuit still concluded that the plaintiff had not alleged scienter because, inter alia, this amount represented only a fraction of the insider's total holdings. *See id*. Additionally, the Tenth Circuit also concluded that the plaintiff had failed to "provide adequate context" regarding any scienter suggested by other stock sales by other insiders because there were "no allegations concerning the price initially paid for the stock, what percentage of total shares these sales consisted of, or whether they were buying other types of shares at the same time." *Id*. Here, Plaintiffs have similarly failed to make such allegations and therefore have failed to provide adequate context as well. Accordingly, the court concludes that Plaintiffs' allegations regarding stock trading by Handler provide little or no support for an inference of scienter, even in combination with Plaintiffs' other allegations.

In ruling upon the motion to dismiss the first amended complaint, this court also concluded, discussing the statements provided by CW 1 and CW 2, that Plaintiffs had failed to assert the kinds of facts that *Adams* found to warrant an inference that the defendants knew the statements they were making were false. The court noted that in *Adams*, a corporate official specifically sat down with one of the defendants on several occasions, advising him that the gas

14

plant was not profitable; when the defendant turned around and signed off on financial statements claiming the plant was profitable, it was thus reasonable to infer both the defendant's knowledge of the false statements and his intent to deceive investors. However, the court found that in the first amended complaint, Plaintiffs had offered no allegations plausibly suggesting the existence of direct evidence of any Inspirato official having actual (or even constructive) knowledge that the company's accounting for its leases violated ASC 842 and GAAP. *See* July 2024 Recommendation at 10.

In connection with the SAC, Plaintiffs include further facts in an attempt to provide enough material to warrant an inference that Defendants knew the statements they were making were false. Specifically, Plaintiffs allege that CW 3 states that "Handler would embellish information related to specific data" and that "Handler was accustomed to skirting around the truth and inflating numbers." SAC ¶¶ 59-62. Plaintiffs further allege that a CW—CW 5—had sent a lengthy email and made multiple telephone calls to Neighbor, informing him that accounting "lacked internal controls, review processes, and managers" and that no one ever looked at month-end close and book journal entries created by the accounting team, allowing them to post "whatever numbers they wanted and no one would ever know if they were right or wrong." *Id*. ¶¶ 70-71. CW 5 says that he reached out to Neighbor multiple times regarding these issues, including in early 2021, and that Neighbor "claimed he would look into fixing the issues." *Id*. Plaintiffs also note that CW 5 "had conversations" with Neighbor "regarding the misapplication of ASC 842," while in the fall of 2022, "the Company held a large meeting with all managers, account executives, and everyone involved in lease accounting during which this issue was discussed," that the participants in the meeting acknowledged that there were big

15

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 56 of 24ed 08/13/25    Page 20 of 28   Page ID
#:995

issues with lease accounting, and that CFO Neighbor was a participant in this meeting. *Id*.

Regarding the new allegations related to Handler, the accompanying factual allegations are too attenuated from the issues at hand to be probative of whether Handler had actual knowledge that the statements he made related to Plaintiffs' claims were false. Plaintiffs specifically allege, with reference to CW 3's statement, that "in the course [of] building pitch materials, CEO Handler would pick out information that made things sound as good as possible without providing a complete picture of the information . . . . [and] attorneys would have to correct the embellishments that CEO Handler attempted to portray[,]" and that Handler would sometimes be prohibited from making statements he proposed by the company's legal department. *Id*. ¶¶ 59, 62. Even assuming that these allegations reflect that Handler generally had a propensity to inflate the truth or even to lie, the allegations are only arguably probative of Handler's propensity for truthfulness and are not probative of whether Handler had actual knowledge regarding anything relevant to Plaintiffs' claims. Accordingly, these allegations do not support an inference of scienter.

As to the new allegations related to Neighbor, while the accompanying factual allegations are less attenuated from the issues at hand than the new allegations related to Handler, they nonetheless do not plausibly constitute direct evidence of Neighbor having actual knowledge that the company's accounting for its leases violated ASC 842 and GAAP. First, as Defendants note, Plaintiffs' allegations relate to accounting issues that manifested in the first two quarters of 2022, before the fall 2022 meeting took place. *See* Motion at 8. Plaintiffs also allege that in fall 2022, the company publicly confessed that the financial statements it had issued for the first and second quarters of 2022 should no longer be relied upon. *See, e.g.*, SAC ¶¶ 43-46. Accordingly,

16

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 57    Filed 08/13/25    Page 21 of 28    Page ID
#:996

the meeting cannot be probative of whether Neighbor had actual knowledge regarding anything

relevant to Plaintiffs' claims, as the related issues arose before the meeting, and the company

publicly confessed to those issues either shortly before or after the meeting took place.

Second, while CW 5 alleges that he generally called issues concerning accounting to

Neighbor's attention, including issues related to the "misapplication" of ASC 842, it is unclear

exactly what the CW 5 discussed with Neighbor. As an initial matter, it is not clear that

discussions about the need for improvements in the accounting department equate to knowledge

by Defendants of ongoing, unaddressed violations of ASC 842. *Cf., e.g.*, *Smallen*, 950 F.3d at

1307 (finding that despite plaintiff alleging that individual defendants participated in meetings

regarding the need for improvement in the corporate defendant's compliance programs, "[w]e

fail to see how . . . discussions about the need for improving [a corporate defendant's]

compliance controls equate[ ] to knowledge of ongoing, unaddressed compliance violations").

Furthermore, CW 5 suggests that he had a conversation with Neighbor regarding the

misapplication of ASC 842 in or around August 2020, when CW 5 started at the company, and

sent him a "very lengthy email" at "the beginning of 2021," but this is long before the alleged

violations took place in the first half of 2022, suggesting that there is no connection to the

violations alleged here. Moreover, as this court noted in issuing its recommendation regarding

the first amended complaint, "Inspirato's 10-Q filings in both the first and second quarter of 2022

expressly acknowledged that Inspirato had struggled in the past with its accountants' knowledge

and its defective internal controls, but indicated that it believed it had since overcome those

problems." July 2024 Recommendation at 18. This remains the case, and as the court noted of

CW 1's statement as referred to in the first amended complaint, *see id.*, nothing in the SAC from

17

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 58 of 24    Filed 08/13/25    Page 22 of 28    Page ID
#:997

CW 5 or any other CW sheds light on whether Inspirato's belief that it had cured those problems by 2022 was unreasonable. As a result, there remains an especially compelling (and comparatively likely) possibility that Neighbor acted upon CW 5's appeals sometime in 2021 and, either rightly or wrongly, believed that he had fixed the issues raised by CW 5; if so, Neighbor would not have acted with scienter.

As noted above, Plaintiffs' other updates to their scienter allegations in the SAC include arguments that Defendants' access to information and hands-on management style support scienter; that the company's core operations support scienter; that substantial remedial actions taken by the company support scienter; that the simplicity of applicable accounting principles supports scienter; and that Neighbor's "secret" termination supports scienter.

Plaintiffs slightly reframe an argument they previously raised in the first amended complaint in alleging that Defendants' access to information and hands-on management style support scienter. Plaintiffs had previously argued that the CWs' allegations demonstrated scienter because they established that Mr. Handler and Mr. Neighbor were extensively involved with financial and accounting matters and displayed an apparent disregard for basic accounting principles. Now, in the SAC, Plaintiffs allege that "Defendants' access to information and the hands-on management style of CEO Handler and CFO Neighbor further support a strong inference of scienter" because the CWs, particularly CWs 3, 6, and 7, describe Handler and Neighbor as "engaged" and "hands-on"—micromanagers who were extremely involved in financial issues, regularly attended meetings with financial teams, and had a lot of financial opinions, but did not back them up with data. However, as this court previously found in recommending that the first amended complaint be dismissed, "Plaintiffs' allegations concerning

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 59 of 24ed 08/13/25    Page 23 of 28   Page ID
#:998

the two [CWs] do not speak directly to either Mr. Handler's or Mr. Neighbor's knowledge (or anyone else's) that Inspirato was misapplying GAAP and misrepresenting the revenue relating to the leases" and "offer little insight as to the scienter of Inspirato or its executives when it comes to the erroneous accounting of the leases and other financial misstatements at issue here." July 2024 Recommendation at 13-14. At most, the CWs' allegations simply indicate that Inspirato was negligent in how its financial affairs were accounted for. As this court noted in dismissing the prior version of the complaint, the plaintiffs' burden is to plead more than mere negligence: as *Gold Resource* makes clear, the requisite level of scienter is a degree of recklessness essentially amounting to "conscious disregard" of the likelihood that the company's financial reporting will be misleading. *See id*. at 14. Here, as with the first amended complaint, the CWs' assertions "do not meaningfully contribute evidence that either individual knew of the errors in Inspirato's accounting for the leases or, at the very least, consciously disregarded the likelihood that such errors were occurring. Simply put, Plaintiffs have not alleged facts that suggest anything more than negligence by Inspirato." *Id*. at 15.

Plaintiffs allege that the "core operations inference" also supports an inference of scienter because Inspirato is a small company and the facts at issue relate to the core operations of the company. The "core operations inference" is "the principle that it may be inferred that facts critical to a business's 'core operations' or important transactions are known to key company officers." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 781 (9th Cir. 2008). However, the Tenth Circuit has "decline[d] to accept a 'core operations' inference in order to plead scienter, absent particularized facts showing what executives actually knew." *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, 372 F. Supp. 3d 1139, 1154 (D. Colo. 2019) (citing *Anderson v.*

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 39 of 24 Filed 08/13/25    Page 24 of 28   Page ID
#:999

*Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1245 (10th Cir. 2016)). Since Plaintiffs have not pled particularized facts showing what executives actually knew, Plaintiffs' argument regarding the core operations inference does not suggest scienter.

Plaintiffs additionally allege that because Inspirato took "substantial remedial actions" after the issues raised in Plaintiffs' SAC occurred, including "re-evaluat[ing] the effectiveness of [Inspirato's] disclosure controls and procedures . . . . [and] developing a remediation plan," as well as adding staff and implementing new measures for "delivering on the type of control environment that [one] would expect with a public company," that those actions lead to a strong inference of scienter. However, as Defendants point out, remedial measures taken to address an issue that has already been publicly acknowledged cannot reasonably suggest scienter. *See, e.g.*, *Messner v. USA Techs., Inc.*, No. CV 15-5427, 2016 WL 1466543, at *11 (E.D. Pa. Apr. 13, 2016) (finding that "substantial remedial actions" were not relevant to scienter and instead "cut against" the plaintiff, "as they support a non-culpable inference by showing Defendants' recognition of the error and attempt to improve its business to reduce the likelihood of another reporting error"). If anything, these allegations suggest that Inspirato took its failures seriously and worked to remedy them once the company became aware of them.

Plaintiffs also argue that "[t]he simplicity of the relevant accounting standards also bolsters the strong inference of scienter alleged. Specifically, ASC 842 can be simple to understand, interpret, and apply, particularly for accounting professionals." Plaintiffs do not explain this point, and its relevance to Plaintiffs' claims is unclear. Plaintiffs may intend to allege that ASC 842 is so simple that it is unlikely it would have been misapplied unintentionally, thereby suggesting that any misapplication of ASC 842 occurred intentionally, or in other words,

20

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 39 of 24  ed 08/13/25    Page 25 of 28   Page ID
#:1000

with scienter. However, "allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000). "Only where such allegations are coupled with evidence that the violations or irregularities were the result of the defendant's fraudulent intent to mislead investors may they be sufficient to state a claim." *City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1261 (10th Cir. 2001). Here, Plaintiffs have provided no well-pled facts plausibly indicating the existence of any evidence showing that the violations were the result of Defendants' fraudulent intent to mislead investors. Accordingly, if this is what Plaintiffs intended to allege by discussing ASC 842's simplicity, Plaintiffs have not coupled this point with the sort of well-supported allegations sufficient to plead a securities fraud claim.

Finally, Plaintiffs do not address how Neighbor's termination relates to the allegations at issue. Plaintiffs allege that Neighbor was moved to a new role at Inspirato on March 15, 2023, and was ultimately terminated on July 15, 2023, over six months after the class period alleged by Plaintiffs ended. While Plaintiffs note that Neighbor's termination was not announced publicly until August 21, 2023, and deem this delay "suspicious," it is not clear why Plaintiffs believe this timing was suspicious, nor is it clear what sort of suspicions Plaintiffs believe the delay might raise. As this court noted in recommending that Plaintiffs' first amended complaint be dismissed, there may be circumstances where an executive's termination following revelation of prior false statements can give support to an inference of scienter, but a plaintiff must offer "particularized allegations connecting the departure[ ] to the alleged fraud." *In Re Hertz Global Holdings, Inc.*, 905 F.3d 106, 118 (3d Cir. 2018) (quoted in *Meitav Dash Provident Funds & Pension, Ltd. v. Spirit AeroSystems Holdings, Inc.*, 79 F.4th 1209, 1228 (10th Cir. 2023)). Plaintiffs' allegations

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 32 of 24 Filed 08/13/25    Page 26 of 28   Page ID
#:1001

fail to plausibly connect Neighbor's termination to the purported fraud in any way.[4]

Plaintiffs' other updates to the SAC reflect no additional allegations against Defendants, and Plaintiffs' allegations that were already included in the first amended complaint—when considered in conjunction with Plaintiffs' new allegations—do not sufficiently support scienter. Accordingly, the court finds that Plaintiffs have failed to adequately plead the necessary element of scienter and respectfully recommends that Defendants' motion to dismiss the securities fraud claims be granted.

II.    *"Control Person" Liability Against the Individual Defendants*

Plaintiffs also assert "control person" liability claims against Handler and Neighbor, seeking to hold them individually liable for acts of securities fraud committed by Inspirato. In the absence of a colorable claim of direct liability for securities fraud, claims for "control person" liability against the individual directors and officers of an entity cannot exist. *Meitav Dash Provident Funds & Pension, Ltd. v. Spirit AeroSystems Holdings, Inc.*, 79 F.4th 1209, 1230 (10th Cir. 2023). Because the court recommends that Plaintiffs' claims against Inspirato be dismissed, the court further recommends that Defendants' motion to dismiss the "control person" claims against Handler and Neighbor be granted.

III.    *Leave to Amend and Dismissal with Prejudice*

Finally, the court notes that Plaintiffs have requested leave to amend "if the Court grants any portion of the Motion." Response at 15. In doing so, Plaintiffs cite *Curley v. Perry*, which

---

[4] In the interest of exhausting Plaintiffs' fresh allegations, the court notes that Plaintiffs report CW 4 claims that, at the end of one meeting, Handler exclaimed, "God, I was not meant to run a company this big." At most, this statement exhibits that Handler was stressed and does not suggest that he acted with scienter.

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 33 of 24 Filed 08/13/25    Page 27 of 28   Page ID
#:1002

states that "the district court should allow a plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim." 246 F.3d 1278, 1284 (10th Cir. 2001). However, "Plaintiffs' request is inadequately presented because it is only a single sentence at the end of Plaintiffs' brief. This [ ] is sufficient grounds for denying leave to amend." *In re Molson Coors Beverage Co. Sec. Litig.*, No. 19-cv-00455-DME-MEH, 2020 WL 13499995, at *13 (D. Colo. Dec. 2, 2020). Furthermore, absent any stated basis for the proposed amendment, "a district court need not independently determine whether grounds justifying an amendment exist." *Sanchez v. Crocs, Inc.*, 667 F. App'x 710, 725 (10th Cir. 2016); *see Molson*, 2020 WL 13499995, at *13. Where a party fails "to proffer what additional evidence they would plead or how such additional evidence would remedy the [complaint's] deficiencies," leave to amend need not be granted. *McNamara v. Pre-Paid Legal Servs., Inc.*, 189 F. App'x 702, 718 (10th Cir. 2006); *see Molson*, 2020 WL 13499995, at *13.

"A dismissal with prejudice is appropriate where a complaint fails to state a claim . . . and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). The court has recommended finding that Plaintiffs' SAC fails to state a claim upon which relief can be granted; the court also recommends finding that, given Plaintiffs' multiple attempts to amend the complaint without success and Plaintiffs' failure to sufficiently address why any amendment would be justified, leave to amend would be futile. *See, e.g.*, *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) ("failure to cure deficiencies by amendments previously allowed" is also grounds for denying leave to amend). Accordingly, the court recommends that Plaintiffs' claims be dismissed with prejudice. *See, e.g.*, *Molson*, 2020 WL 13499995, at *13.

Case No. 1:23-cv-00438-RMR-SBP    Document 73    filed 08/11/25    USDC Colorado
Case 2:24-cv-02952-SB-JC    Document 34    Filed 08/13/25    Page 28 of 28    Page ID
#:1003

**CONCLUSION**

For the foregoing reasons, this court respectfully recommends that Defendants' Motion

be **GRANTED** and that the SAC be dismissed **with prejudice**.[5]

DATED: August 11, 2025                    BY THE COURT:

_____

Susan Prose
United States Magistrate Judge

---

[5] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").