UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAWSHEEN DUFFAYDAR et al., <br><br> Plaintiffs, <br><br> v. <br><br> SONDER HOLDINGS INC. et al., <br><br> Defendants. | Case No. 2:24-cv-02952-SB-JC <br><br> ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT [DKT. NO. 49] |

After an audit revealed that Defendant Sonder Holdings, Inc.'s annual report and financial statements had misapplied relevant accounting standards, it cautioned investors that the statements were unreliable and subsequently issued financial restatements to reflect tens of millions of dollars in additional losses. Sonder's stock price dropped, and Nawsheen Duffaydar filed this putative class action against Sonder and three of its executives, alleging securities fraud. The judge first assigned to the case consolidated it with another putative class action and appointed Tad Park as the lead plaintiff. In February 2025, Defendants moved to dismiss Park's first amended complaint (FAC) for failure to state a claim. The prior judge took the motion under submission in May and then recused in June. This Court now grants the motion with leave to amend.

I.

Sonder is a hospitality-oriented business with approximately 1,700 employees that leases apartments and hotel rooms in 10 countries. Dkt. No. 44 ¶¶ 10, 21, 24 (FAC). Sonder works directly with real estate owners; furnishes and decorates their properties; and then makes them available for guests to book, both directly through its Sonder app and website and indirectly through other websites. *Id.* ¶ 22. Francis Davidson is the cofounder and chief executive officer of Sonder. *Id.* ¶ 12. Dominique Bourgault was its chief financial officer (CFO). *Id.* ¶ 14.

1

Chris Berry is alleged to have been Sonder's interim CFO during the class period, although Defendants dispute that allegation. *Id.* ¶ 13; Dkt. No. 49-1 at 3.

Sonder filed its 2022 annual financial report on March 16, 2023, and quarterly reports on May 10, August 9, and November 14, 2023. Dkt. No. 44 ¶¶ 28–42. Each report disclosed the same information about Sonder's financial reporting for lease agreements:

> We previously identified a material weakness in our internal control over financial reporting related to the process to capture and record lease agreements timely and accurately. Management has concluded that this material weakness in internal control over financial reporting is due to the fact that the Company did not have the adequate resources with the appropriate level of experience and technical expertise to oversee the Company's leasing business processes and related internal controls.

*Id.* ¶¶ 31, 35, 39, 42.[1] Each statement also reported that there had been no other changes in Sonder's internal control over financial reporting that were likely to materially affect internal control. *Id.*

On March 15, 2024, Sonder announced that its financial statements in the 2022 annual report and the subsequent quarterly reports should no longer be relied upon due to "accounting errors related to the valuation and impairment of operating lease [right of use (ROU)] assets and related items." *Id.* ¶ 44. Sonder disclosed that in the course of preparing its 2023 annual report, it had determined that its prior valuations "had not considered certain relevant impairment indicators and related valuation information impacting the carrying value of such assets and related items, as required by Accounting Standards Codification (ASC) Nos. 842, Leases, and 360, Property, Plant, and Equipment, in addition to related standards and interpretations." *Id.* ¶ 45.[2] Based on its ongoing review, Sonder expected "to

---

[1] The quotations in this order omit the bold and italics used extensively in the FAC to emphasize parts of Sonder's reports.

[2] ASC 842 is a standard issued by the Financial Accounting Standards Board (FASB) in 2016 that generally requires lessees to recognize all leases on their balance sheets. Dkt. No. 44 ¶ 25. ASC 360 provides guidelines on how to account for long-lived assets such as buildings or land, including testing for impairment of assets (when the current fair value of the asset differs from its carrying value). *Id.* ¶ 27.

record material non-cash impairment charges, and related reductions in ROU lease assets and related items" that would "increase the Company's overall net loss and loss per share in the impacted periods" and "could have an adverse effect upon the Company's debt." *Id*. The report noted that Sonder was in discussions with its lenders to seek waivers of noncompliance but that if the debt were accelerated, Sonder "may not have sufficient cash or be able to borrow sufficient funds to refinance the debt or sell sufficient assets to repay the debt, which could immediately adversely affect our business, cash flows, results of operations and financial condition." *Id*. If its efforts to improve its financial position were unsuccessful, it "may not be able to continue ongoing operations or meet its obligations without favorable liquidity options or additional funding." *Id*. Sonder also filed a separate notification that it would be unable to file its annual report on time because it was working on restating the prior erroneous financials. *Id*. ¶ 46.

On this news, Sonder's stock price fell 38.2 percent. *Id*. ¶ 47. Sonder filed its 2023 annual report, which included a restatement of the prior financials, in September 2024. *Id*. ¶ 49. Its net loss in 2022 increased by $80 million to $245 million, and its net loss in 2023 was more than $295 million. *Id*. ¶ 60.

The FAC alleges that that Sonder's earlier financial statements were false and misleading both because they contained material accounting errors and because they failed to disclose all the issues with Sonder's internal controls. *Id*. ¶ 43. The FAC also infers that Defendants knowingly misled investors, relying on (1) statements by two confidential witnesses, (2) the core-operations inference, (3) the alleged simplicity of ACS 842 and 360, (4) the magnitude of the errors, and (5) the resignations of three executives. *Id*. ¶¶ 52–61. On behalf of a class of investors who purchased Sonder's stock between March 16, 2023 and March 15, 2024, Park alleges claims for (1) violation of § 10(b) of the Exchange Act and Rule 10b-5 by Sonder, Davidson, Bourgault, and Berry and (2) violation of § 20(a) of the Exchange Act by the individual defendants. Defendants move to dismiss for failure to state a claim.

II.

To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All well-pleaded factual allegations must be accepted as true, but a court need not credit

3

"[t]hreadbare recitals of the elements of a cause of action" or "a legal conclusion couched as a factual allegation." *Id.* (cleaned up).

In addition, a plaintiff asserting a private securities-fraud action must meet the heightened pleading requirements imposed by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 (PSLRA), which "present no small hurdle for the securities fraud plaintiff." *In re Verifone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Similarly, the PSLRA requires that a securities-fraud plaintiff plead both falsity and scienter with particularity. 15 U.S.C. §§ 78u-4(b)(1)(B), (b)(2)(A).

### III.

To state a claim under § 10(b) of the Exchange Act—and Rule 10b-5, which implements it—a plaintiff must allege: (1) falsity—i.e., a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 413 (9th Cir. 2020). To prevail on a § 20(a) claim, a plaintiff must first allege a violation of § 10(b). *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1033 n.15 (9th Cir. 2002).

Defendants challenge three elements of Park's § 10(b) claim: falsity, scienter, and loss causation.

### A.

To adequately allege falsity under the PSLRA, a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Defendants do not dispute that the financials in the 2022 annual statement and the subsequent quarterly interim statements were materially false—after all, that was the reason they were restated. Instead, Defendants challenge the allegation that the statements were false because Sonder "failed to disclose all issues with its internal controls," arguing that the FAC does not adequately identify the allegedly undisclosed internal-control issues.

In his opposition, Park appears to raise three distinct arguments.

4

First, he argues that Sonder's repeated statement that there had not been material changes in internal controls was false. This argument appears to assert a new alleged misrepresentation not identified in the TAC. In any event, it still does not identify with specificity what information Sonder omitted from its disclosures.

Second, Park argues that "Defendants failed to disclose relevant impairment indicators and related valuation information impacting the carrying value of ROU lease assets and related items as required by ASC 842 and 360." Dkt. No. 51 at 7. It is not clear how this alleged failure goes to Sonder's internal controls, as opposed to the substantive information it failed to disclose. Regardless, Park cites only to paragraphs in the FAC describing what Defendants *did* disclose; he cites nothing in the FAC identifying what internal control issues Defendants did not disclose. At best, Park has identified a new theory of liability he could assert in a further amendment; he has not shown that the FAC identifies any material omission with the requisite particularity.

Third, Park argues that Defendants' certifications pursuant to the Sarbanes–Oxley Act (SOX) are actionable false statements. This, too, is unresponsive to Defendants' argument that the FAC does not adequately identify the specific issues with Sonder's internal controls that Defendants allegedly failed to disclose.

In sum, the FAC does not identify what specific "issues with its internal controls" Sonder omitted from its statements. Dkt. No. 44 ¶ 43. This failure is particularly striking because each of Sonder's statements disclosed the existence of a "material weakness in internal control over financial reporting." *E.g.*, *id*. ¶ 31. Thus, Park is not alleging that Sonder hid its internal control issues entirely, but rather that its disclosure was incomplete. The FAC, however, provides no notice of the information Defendants are alleged to have withheld. "By requiring specificity, the PSLRA prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating why the defendant's alleged statements or omissions are deceitful." *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 835 (9th Cir. 2022) (cleaned up). Because the FAC does not state with particularity the basis for its claim that Defendants materially omitted disclosure of unspecified issues with internal controls, it fails to state a claim predicated on those omissions.

## B.

Turning to the heart of Park's claims—the incorrect financial statements—Defendants argue that the FAC does not allege the requisite scienter. To satisfy

5

this element, a private plaintiff seeking to recover money damages for securities fraud must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). To be liable, the defendant must make false or misleading statements either intentionally or with deliberate recklessness. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). Deliberate recklessness requires "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id*. (quotation omitted).

In *Tellabs, Inc. v. Makor Issues & Rights., Ltd.*, the Supreme Court interpreted the PSLRA's requirement that the alleged facts must give rise to a "strong inference" of scienter. 551 U.S. 308 (2007). Under this standard, "the inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations." *Id*. at 324. A court faced with a motion to dismiss "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id*. at 322.[3] Considering the full context, courts conduct a comparative inquiry—they

---

[3] Defendants request that the court take judicial notice of excerpts from eight of Sonder's filings referenced in the FAC and four FASB updates to ASC 842. These documents are incorporated by reference into the FAC, subject to judicial notice, or both. *See, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (incorporation-by-reference doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims"); *Garcia v. J2 Glob., Inc.*, No. 2:20-CV-06096-FLA, 2021 WL 1558331, at *9–10 (C.D. Cal. Mar. 5, 2021) (collecting cases to support taking judicial notice of FASB accounting standards). Park objects to Defendants' reliance on the exhibits for the truth of the matter asserted but identifies no facts within those documents on which Defendants improperly rely. That the documents may undermine the truth of Park's allegations—for example, because the 192-page ASC 842 and three subsequent updates belie the TAC's conclusory allegation that the guidance "can be simple to understand, interpret, and apply" (Dkt. No. 44 ¶ 26)—does not mean that Defendants are improperly relying on the truth of any contents of the exhibits.

"must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff," and determine which is most compelling. *Id*. at 324. A securities-fraud complaint survives dismissal under Rule 12(b)(6) "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*.

Following *Tellabs*, the Ninth Circuit conducts "a dual inquiry": first, the court determines "whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter; second, if no individual allegations are sufficient, [it must] conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Zucco*, 552 F.3d at 992.

In his opposition, Park invokes seven circumstances—not all of which are developed in the TAC—to support his allegation of scienter: (1) Defendants' motivation to comply with Sonder's debt covenants; (2) confidential witness statements; (3) the core-operations inference; (4) the magnitude of the restatement; (5) key executive departures; (6) Defendants' SOX certifications; and (7) the simplicity of the accounting standards. Park does not contend that any of these circumstances standing alone meets his burden, but rather that the totality of the circumstances supports a strong inference of scienter. The Court considers each issue raised by Park, together with the additional circumstances raised by Defendants.

1.

Park begins by arguing that Defendants were motivated to misstate their financial results to comply with their debt covenants. As Defendants correctly argue, this theory is not developed in the TAC, which does not mention debt covenants or loan agreements in its scienter allegations. The sole reference to the loans in the TAC is contained in Sonder's March 15, 2024 press release acknowledging that the restatement could have an adverse effect on its debt and that it was working with its lenders to reach a solution. Dkt. No. 44 ¶ 45.

---

Park's objection is overruled, and the request for judicial notice is granted, although most of the exhibits are immaterial to the Court's analysis.

Even assuming it is properly before the Court, Park's argument that Defendants were motivated to understate Sonder's losses to comply with their loan obligations assumes that Defendants were aware of the accounting errors—the very conclusion Park is seeking to demonstrate. *Howard v. Everex Sytems., Inc.*, on which Park relies, found that a CEO's potential motive to inflate sales to raise financing was sufficient to permit a jury to infer scienter when combined with "evidence indicating that [he] signed the financial statements in the face of potentially alarming information concerning [the company's] financial condition." 228 F.3d 1057, 1064 (9th Cir. 2000). Absent other allegations establishing that Defendants knew of the accounting errors in 2023, the fact that the errors jeopardized Sonder's loans does not suggest that Defendants were hiding the errors; it is at least equally plausible that they were unaware that the financials were incorrect. *See id.* (under heightened pleading standard of PSLRA, "a mere showing of motive and opportunity would not suffice to survive a motion to dismiss").

2.

The FAC includes allegations from two confidential witnesses—CW1 and CW2—to support an inference of scienter. "[A] complaint relying on statements from confidential witnesses must pass two hurdles to satisfy the PSLRA pleading requirements" for scienter. *Zucco*, 552 F.3d at 995. First, the witnesses "must be described with sufficient particularity to establish their reliability and personal knowledge." Second, the statements reported by the confidential witnesses "must themselves be indicative of scienter." *Id*.

CW1, a senior leasing analyst at Sonder from August 2022 to February 2024, helped implement ASC 842 after Deloitte audited the company. Dkt. No. 44 ¶ 53. Deloitte found Sonder's accounting to be "garbage," noting that the company failed to prepare required long-term lease forecasts under ASC 842. *Id*. ¶ 54. Some of Sonder's leases also had provisions permitting rent to be suspended or partially discounted, or allowing a cap on rent increases, creating further accounting difficulties that Sonder "did not adequately address." *Id*. ¶ 55. These problems were repeatedly discussed at "many meetings" over several months, and the errors were so pervasive it was often "faster to start from scratch . . . than to find mistakes and fix them." *Id*. ¶ 56. CW1 further reported that the CEO, CFO, vice presidents, and other leaders regularly attended meetings—first weekly, then bi-weekly—addressing these issues, and that all of management was aware of Deloitte's audit findings. *Id*.

These allegations do not rise to the level of particularity required to show a strong inference of scienter. CW1's statements about the executives' alleged participation in meetings may bear on scienter, but they lack sufficient indicia of CW1's reliability. There is no allegation, for example, that CW1 attended the meetings described. *Cf. Zucco*, 552 F.3d at 996 ("Although the SAC describes the confidential witnesses' job titles and employment information with ample detail . . . [it] fails to allege with particularity facts supporting its assumptions that the confidential witnesses were in a position to be personally knowledgeable of the information alleged."). As in *Zucco*, CW1's generalized statements about corporate knowledge "fail to establish that the witness reporting them has reliable personal knowledge of the defendants' mental state." *Id*. at 998.

Even if credited, the allegations are insufficient to establish scienter. At most, they suggest that Sonder's leadership may have been aware of weaknesses in the company's accounting, but they do not show specific knowledge that the financial statements were inaccurate, much less awareness of the specific problems requiring restatement. As one court observed in rejecting similar claims, "the mere fact that [the CFO] participated in meetings regarding financial issues" does not show "that [he] knew of the errors in [the company's] accounting for the leases or, at the very least, consciously disregarded the likelihood that such errors were occurring." *Bouzaglo v. Inspirato Inc.*, No. 1:23-CV-00438, 2024 WL 3738813, at *6 (D. Colo. July 16, 2024), *report and recommendation adopted sub nom. Koch v. Inspirato Inc.*, 2024 WL 4591328 (D. Colo. Sept. 23, 2024). As in *Inspirato*, CW1's allegations here amount to an assertion that Sonder "wasn't very good at accounting" and "simply indicate that [Sonder] was negligent, perhaps even grossly so, in how its financial affairs were accounted for." *Id*. Since negligence, or even gross negligence, does not give rise to § 10(b) liability, the confidential witness statements do not support a strong inference of scienter.

The allegations of CW2 are likewise insufficient. CW2 worked for Sonder as a senior lease accountant and a lease accounting administration manager from July 2021 to May 2024. *Id*. ¶ 57. CW2 stated that Sonder "had not properly implemented systems in place to comply with ASC 842 when it went public"; that Sonder's leadership was "horrible"; and that leadership turnover contributed to its problems. *Id*. These statements do not even address scienter—CW2's assertions that leadership was "horrible" and that leadership turnover was a problem say nothing about any Defendant's knowledge of the accounting errors and therefore have no probative value. Similarly, the conclusory allegation that Sonder had not properly implemented systems to comply with ASC 842 merely identifies the

9

failure Sonder disclosed in its restatement.  It does not show that Defendants knew that any statements were false at the time they were made.

3.

Park also invokes the core-operations inference—"the theory that facts critical to a business's core operations are known to a company's key officers." *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1027 (N.D. Cal. 2020) (cleaned up).  Under that theory, "in rare circumstances," corporate executives' knowledge may be inferred "where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter."  *Reese v. Malone*, 747 F.3d 557, 576 (9th Cir. 2014), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017).  To support this theory, Park alleges that Sonder has acknowledged that "certain policies and estimates" are critical to its business.  Dkt. No. 44 ¶ 58.  Park has not, however, connected those policies to the accounting problems that gave rise to the financial restatement.  Nothing in the FAC suggests that the accounting rules in ASC 842 and 360—or even accounting more broadly—is so central to Sonder's business that it would be absurd to suggest that its management did not understand the accounting requirements or the errors that resulted from their misapplication.

4.

Park next argues that the magnitude of the restatement—reflecting an additional $80 million in losses in 2022—supports a strong inference of scienter.  He cites district court decisions that have found the magnitude of obvious accounting violations to offer additional support to a strong inference of scienter where other factors support such a finding.  As those cases explain, however, "allegations regarding the nature and magnitude of the alleged accounting violations will rarely be enough by themselves to show scienter."  *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1042 (N.D. Cal. 2016).

Defendants dispute the significance of the restatement, contending that Park has focused on a single metric (net losses for 2022) while ignoring that the restatement improved other reported financial results.  But even assuming that the restatement reflects a large negative outcome for Sonder, "the magnitude of the [r]estatement, without specific allegations that Defendants possessed the requisite mental state, fails to sufficiently plead a strong inference of scienter."  *Perrin v.*

*SouthWest Water Co.*, No. 2:08-CV-7844-JHN, 2011 WL 10756419, at *9 (C.D. Cal. June 30, 2011).

5.

The TAC identifies three resignations by Sonder executives that it alleges support an inference of scienter. On August 22, 2024, Sonder announced the resignation of its chief operating officer effective later that month. Dkt. No. 44 ¶ 61. On November 4, 2024, it announced that its chief financial officer (Defendant Bourgault) and chief accounting officer would be resigning effective in December. *Id*.[4]

"Where a resignation occurs slightly before or after the defendant corporation issues a restatement, a plaintiff must plead facts refuting the reasonable assumption that the resignation occurred as a result of restatement's issuance itself in order for a resignation to be strongly indicative of scienter." *Zucco*, 552 F.3d at 1002 (9th Cir. 2009). In *Zucco*, the Ninth Circuit found that the resignation of the defendant's independent accounting firm a month after a restatement issued "is not surprising—it had just been partially responsible for the corporation's failure to adequately control its accounting procedures. This is not enough to support a strong inference of scienter." *Id*. Similarly, "conclusory allegations that a financial manager resigns or retires during the class period or shortly before the corporation issues its restatement, without more, cannot support a strong inference of scienter." *Id*. Instead, "[a]bsent allegations that the resignation at issue was uncharacteristic when compared to the defendant's typical hiring and termination patterns or was accompanied by suspicious circumstances," the inference that resignation demonstrates scienter "will never be as cogent or as compelling as the inference that the employees resigned or were terminated for unrelated personal or business reasons." *Id*.

The TAC alleges no details about the circumstances of any of the three resignations identified, which all occurred more than five months after Sonder disclosed the problems with its accounting. Nor does the TAC describe Sonder's typical hiring and termination patterns (other than CW2's statement that turnover was a problem, which undercuts the suggestion that the resignations were

---

[4] There appears to be an error in the dates, as the TAC alleges that Sonder announced on November 4 that the chief accounting officer had given notice on November 7 that he was resigning. Dkt. No. 44 ¶ 61.

11

abnormal). As in *Zucco*, without further context, the resignations do not support an inference of scienter.

6.

The TAC alleges that in connection with each of the erroneous financial statements, Defendants Davidson and Bourgault signed SOX certifications attesting to the accuracy of the reporting. Dkt. No. 44 ¶¶ 28, 32, 36, 40. "Pursuant to section 302(a) of the Sarbanes–Oxley Act, a company's 'principal executive officer or officers and the principal financial officer or officers' must certify the accuracy and reliability of its quarterly financial reports." *Zucco*, 552 F.3d at 1003 (citing 15 U.S.C. § 7241(a)). Such certifications "add nothing substantial to the scienter calculus" in a securities-fraud case. *Id*. at 1004 ("[W]e reject Zucco's invitation to undermine the PSLRA's distinct requirements for pleading falsity and scienter, and hold that [the] Sarbanes–Oxley certifications are not enough to create a strong inference of scienter and do not make Zucco's otherwise insufficient allegations more compelling by their presence in the same complaint.").[5] The TAC's bare allegations that two individual defendants signed SOX certifications therefore do not demonstrate scienter.

7.

Finally, Park argues that the simplicity of the relevant accounting standards bolsters an inference of scienter. *See U.S. Sec. & Exch. Comm'n v. Winemaster*, 529 F. Supp. 3d 880, 912 (N.D. Ill. 2021) ("[I]f the GAAP rules the defendant is alleged to have violated are relatively simple, it is more likely that he was aware of the violations and consciously or intentionally implemented or supported them, or was reckless in this regard.") (cleaned up). As noted above, however, the TAC's conclusory allegation that the accounting guidance "can be simple to understand, interpret, and apply, particularly for accounting professionals" (Dkt. No. 44 ¶¶ 26–27) is belied by the guidance itself. The 2016 ASC 842, on which the TAC principally relies, spans 192 pages, and it was followed by multiple updates. Dkt. Nos. 49-6–49-9; *see also Wyche v. Advanced Drainage Sys., Inc.*, No. 15-CV-

---

[5] Park represents that the Ninth Circuit held in *Verifone*, 704 F.3d at 708–09, that SOX certifications added to the strong inference of scienter alleged. *Verifone* recites the plaintiff's allegations about the SOX certifications in its summary of the complaint but does not appear to rely on those certifications as part of its finding that scienter was adequately alleged; it certainly does not purport to overrule *Zucco* or expressly hold that SOX certifications support a finding of scienter.

5955, 2017 WL 971805, at *16 (S.D.N.Y. Mar. 10, 2017) (dismissing § 10(b) claim based on accounting improprieties for lack of scienter and noting that "the few courts to consider lease classification have not found it straightforward"), *aff'd*, 710 F. App'x 471 (2d Cir. 2017). The Court need not accept Park's characterization of documents that are properly subject to judicial notice. As in *Perrin*, another case where Park's counsel asserted that the relevant accounting rules were simple, "the exhibits . . . fail[] to illustrate the simplicity of the violated rules." 2011 WL 10756419, at *10.

8.

Viewing the FAC holistically, Park offers scant support from which to draw a strong inference of scienter. Moreover, Defendants identify additional circumstances that, while not independently dispositive, further undercut such an inference. Most significantly, there is no allegation that any defendant sold Sonder stock during the class period, which undermines the suggestion that Defendants had artificially inflated the stock price intentionally. *See Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) ("[W]e have recognized that a lack of stock sales can detract from a scienter finding.") (citing *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 884–85 (9th Cir. 2012)). Additionally, Sonder's retention of an independent auditor to analyze application of ASC 842 to its leases—and the absence of any allegation that Defendants withheld information from the auditor or interfered with the audit—is more consistent with a mistake than with fraud.

In sum, considering all the circumstances alleged, Park has not shown a "cogent and compelling" inference that Defendants misstated Sonder's financials intentionally or with deliberate recklessness, as opposed to negligently. *Tellabs*, 551 U.S. at 324. The TAC therefore does not state a plausible claim for securities fraud under § 10(b) and Rule 10-b5.[6]

C.

"Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation of section 10(b)." *Zucco*, 552 F.3d at 990. Because Park has not stated a claim under § 10(b), his claim under § 20(a) necessarily fails.

---

[6] It is unnecessary to reach Defendants' additional argument that the TAC does not adequately allege loss causation.

13

IV.

Rule 15(a)(2) requires that "[t]he court should freely give leave [to amend] when justice so requires," and the Ninth Circuit directs that the policy favoring amendments "is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). The policy applies with special force in securities-fraud cases. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (explaining that adherence to the Rule 15(a) standard "is especially important in context of the PSLRA" because "[i]n this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error"). Leave may be denied, however, for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In his opposition, Park conclusorily requests leave to amend if the motion is granted. Defendants reply that his claims should be dismissed with prejudice because he makes no attempt to identify additional facts he could add to a second amended complaint (SAC). Park has not previously amended in response to a motion to dismiss, and Defendants have not shown that amendment would necessarily be futile. Particularly in light of the strong policy in favor of amendment, the Court will grant Park another opportunity to plead his claims.

Accordingly, Park shall file his SAC no later than September 8, 2025. Park is cautioned that if Defendants move to dismiss the SAC for failure to state a claim, the Court does not expect to allow him again to amend his pleading to add allegations that could have been included in the SAC.

V.

Defendants' motion to dismiss the FAC is granted, and Park's claims are dismissed for failure to state a claim. Park's request for leave to amend is granted. Park shall file his SAC by September 8, 2025. Failure to timely file the SAC will be deemed an admission that amendment would be futile, and his claims will be dismissed with prejudice.

Date: August 27, 2025

_____
Stanley Blumenfeld, Jr.
United States District Judge